IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HITOSHI YOSHIKAWA,<br><br>     Plaintiff,<br><br> vs.<br><br>CITY AND COUNTY OF HONOLULU; TROY K. SEGUIRANT; GREG TALBOYS; AGT CONSTRUCTION, LLC; & JAMES A. SCHMIT,<br><br>     Defendants. | CIVIL NO. 18-00162 JAO-RT<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT TROY K. SEGUIRANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT; GRANTING IN PART AND DENYING IN PART DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT; AND DENYING PLAINTIFF HITOSHI YOSHIKAWA'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT TROY K. SEGUIRANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT; GRANTING IN PART AND DENYING IN PART DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT; AND DENYING PLAINTIFF HITOSHI YOSHIKAWA'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

This case concerns Plaintiff Hitoshi Yoshikawa's ("Plaintiff") attempt to rebuild his house in Kaneohe, Hawaiʻi and the regulatory challenges he faced in doing so.  Plaintiff alleges that the City and County of Honolulu (the "City") and one of its building inspectors, Defendant Troy K. Seguirant ("Seguirant"), violated Plaintiff's civil rights through their interpretation and enforcement of various municipal laws, which frustrated Plaintiff's residential construction project.  In his Second Amended Complaint ("SAC"), ECF No. 79, Plaintiff also asserts various tort claims against the City, his contractor Defendant AGT Construction, LLC ("AGT"), AGT's owner, Defendant Greg Talboys ("Talboys"), and his architect, Defendant James Schmit ("Schmit").  Seguirant and the City (collectively, the "City Defendants") each moved to dismiss the SAC, ECF Nos. 121, 122, and Plaintiff moved for partial summary judgment on his equitable estoppel claim against the City, ECF No. 130  For the reasons discussed below, the Court GRANTS IN PART AND DENIES IN PART the City Defendants' motions to dismiss and DENIES AS MOOT Plaintiff's motion for partial summary judgment.

//

//

//

//

//

# I.      BACKGROUND

## A.      Facts[1]

Plaintiff, a Japanese national, resides in the City and County of Honolulu and owns waterfront real property located in Kaneohe (the "Property").  ECF No. 79 ¶¶ 8–9, 23.  At the time Plaintiff purchased the Property in 2014, it contained a "nonconforming structure" within the shoreline setback.  *See* Hawai'i Revised Statutes ("HRS") § 205A-43; ECF No. 79 ¶ 31.  Plaintiff then hired Schmit to design plans and obtain a building permit so that Plaintiff could repair and renovate the Property in accordance with rules and regulations pertaining to construction within the shoreline setback area.  ECF No. 79 ¶¶ 23–26.

### 1.      The Permit and Inspections

In November 2014, Schmit submitted a building permit application for an "Addition and Alteration to existing Single Family Dwelling," which required approval from various sources, including the Building and Zoning divisions within the City's Department of Planning and Permitting ("DPP").  *Id.* ¶¶ 37, 39. Following extensive review and "[i]terative feedback" between Schmit and DPP officials, Schmit revised the plans and ultimately obtained a building permit from DPP in October 2015.  *Id.* ¶¶ 42–49.  After obtaining the building permit, Plaintiff

---

[1]  The Court's recitation of facts is based on the allegations in the SAC, which are taken as true for purposes of the City Defendants' motions to dismiss.

began substantial work on the addition and alteration project (the "Project"), beginning with demolition work in areas outside the shoreline setback in November 2015.  *Id.* ¶¶ 50–51.

Seguirant inspected the Project at least nine times between December 2015 and May 4, 2016, which, according to Plaintiff's contractors, was unusually frequent as building inspectors might visit comparable projects only two or three times.  *Id.* ¶¶ 52, 54, 57.  Seguirant did not raise any issues or concerns relating to the scope or execution of the Project to Plaintiff, any of Plaintiff's contractors and subcontractors, or Schmit during any of these inspections.  *Id.* ¶ 54.  Plaintiff's contractors noticed Seguirant "approach and converse cordially with the next door neighbor" on multiple occasions.  *Id.* ¶ 55.  Plaintiff alleges that Seguirant owns and operates a construction business while working as a building inspector for the City, which Plaintiff alleges is a conflict of interest given Seguirant's role as a City building inspector.  *Id.* ¶¶ 13, 152.a.

### 2. The May 6, 2016 Unappealable Notice of Violation

On May 6, 2016, Seguirant issued a Notice of Violation and Stop Work Order on the Project (the "May 2016 NOV").  *Id.* ¶ 58.  The May 2016 NOV informed Plaintiff that a "new building permit is required for the removal of the walls of the existing non-conforming structure and the construction of the new walls within the shoreline setback area" and cited Plaintiff for the "reconstruction

of the existing nonconforming structure within the shoreline setback area." *Id.* ¶ 63. The day he issued the May 2016 NOV, Seguirant informed Talboys that "a Complaint had come in from a woman who had seen the construction Project while kayaking in Kaneohe Bay" and that Talboys "better watch out, she's super knowledgeable." *Id.* ¶¶ 59, 61. Plaintiff alleges that Seguirant's comment about the kayaker's complaint was fabricated and intended to distract Plaintiff from Seguirant's misconduct that then began to unfold. *Id.* ¶ 62.

After receiving the May 2016 NOV, Plaintiff's representatives, including Schmit and Talboys, stopped work on the Project, requested an appeal or hearing regarding the May 2016 NOV, and tried to convince various DPP officials to rescind the May 2016 NOV in various written communications and in-person meetings. *Id.* ¶¶ 64–70. In response to Plaintiff's request for an appeal, DPP's then-Acting Director George Atta informed Plaintiff that his request was premature, as Notices of Violation are not appealable; only Notices of Order are. *Id.* ¶ 71. Plaintiff then continued to exchange information and revised plans with DPP officials, including its Director and Deputy Director. *Id.* ¶ 73.

### 3. The Challacombe Letter

In October 2016, then-Acting DPP Director Art Challacombe issued a written letter indicating that a revised proposal Schmit had sent him was consistent with ordinances regarding nonconforming structures in the shoreline setback area

(the "Challacombe Letter").  *Id.* ¶ 74.  The Challacombe Letter explained that the revised proposal did not "increase the nonconformity and is less than 50 percent of the replacement cost of the nonconforming structure," and so complied with the City's ordinances regarding construction work within the shoreline setback area. *Id.*  The Challacombe Letter further authorized Plaintiff to submit a building permit based on the revised plans.  *Id.*  Following receipt of the Challacombe Letter, Plaintiff expended substantial resources and time to revise the Project's plans and submitted revised plans in December 2016.  *Id.* ¶¶ 76–77.

### 4.    The March 14, 2017 Appealable Notice of Order

On February 2, 2017, while working in Plaintiff's yard, Plaintiff's contractors overheard Seguirant tell the next-door neighbor, "I keep shutting them down but f--- [expletive] these Haoles[2] don't listen, that's why I try keep it local."  *Id.* ¶¶ 79–81.

---

[2]  Plaintiff offers the following definition of the word "Haole":

> The word "Haole" is a term formerly used to connote "foreigner" but in practice has evolved into a racial slur and/or derogatory term typically used by locals in Hawaiʻi, against white people (generally), and/or persons who are not locals such as tourists, as well as residents, and military personnel who are not originally from Hawaiʻi (i.e. non-locals).

ECF No. 79 ¶ 120.a n.7.

On March 14, 2017, Seguirant issued a Notice of Order (the "March 2017 NOO") regarding the May 2016 NOV, which Plaintiff alleges contradicted the Challacombe Letter.  *Id.* ¶ 82.  The March 2017 NOO stated that the "existing non-conforming structure within the shoreline setback area was reconstructed, which is not in accordance with the approved building permit" and that "a new building permit is required for removing the walls of the existing non-conforming structure and constructing new walls within the shoreline setback area."  ECF No. 79-10 at 1.  Plaintiff was confused because he believed that the Challacombe Letter voided the May 2016 NOV.  ECF No. 79 ¶ 83.

### 5.  The Amended Building Permit

Despite the issuance of the March 2017 NOO, on March 29, 2017, DPP issued an amended building permit (the "Amended Building Permit") for the Project that was consistent with the Challacombe Letter.  *Id.* ¶ 84.  Various DPP officials further verbally assured Plaintiff's representatives that the Project could proceed, so Plaintiff recommenced work on the Project.  *See id.* ¶ 86.  Plaintiff subsequently initiated an appeal of the March 2017 NOO with the City's Board of Building Appeals ("BBA").  *Id.* ¶ 87.

### 6.  The April 7, 2017 Unappealable Notice of Violation

On April 7, 2017, Seguirant issued a further Notice of Violation and Stop Work Order (the "April 2017 NOV").  *Id.* ¶ 88.  The April 2017 NOV

"concern[ed] the same alleged issues pertaining to the Project's scope of work in the setback," but in fact covered additional violations as well. *Id.*; ECF No. 79-12. The April 2017 NOV stated that the information supplied to obtain the Amended Building Permit was incorrect in violation of Revised Ordinances of Honolulu ("ROH") § 18-5.3(b); that the existing nonconforming structure was removed and a new structure had been built in its place in violation of ROH § 23-1.6; that the building permit was issued prior to Plaintiff obtaining a special management area use permit in violation of ROH § 18-5.3(b); that a new portion of the structure had been built in the shoreline setback area without a shoreline setback variance in violation of ROH § 23-1.5; and that a structure was built in the special management area prior to Plaintiff obtaining a special management area use permit in violation of ROH § 25-6.1. ECF No. 79-12. Plaintiff stopped work on the Project again and continued to challenge the May 2016 NOV, the March 2017 NOO, and the April 2017 NOV, but the various City officials "went silent, ceasing communications with Plaintiff's representatives as to the status of the Project[.]" ECF No. 79 ¶¶ 90–92.

### 7.    The BBA Hearing and Order

On November 3, 2017, the BBA held a hearing on Plaintiff's appeal of the March 2017 NOO, attended by Seguirant and his supervisor. *Id.* ¶ 99. The BBA denied Plaintiff's appeal in its Findings of Fact, Conclusions of Law, and Decision

and Order ("the BBA Order"), which was issued sometime in 2018.[3]  *See id.* ¶ 101; ECF No. 121-3.

Plaintiff alleges that five months after the hearing he still had not received the BBA Order, but learned through discovery that it was sent to outdated addresses for Schmit and Plaintiff's prior counsel.  ECF No. 79 ¶¶ 101, 103–06. Plaintiff does not allege who caused this error.  *See id.*  Plaintiff further alleges that the Stop Work Order contained in the April 2017 NOV is effectively non-appealable because it was not followed by a Notice of Order.  *Id.* ¶ 102.

The BBA found that "Seguirant issued the [May 2016] NOV based on his observations of the Property and determined that the entire structure was demolished which exceeded the scope of work of the Building Permit,"[4] ECF No. 121-3 at 2–3, that Seguirant's supervisor "confirmed the actual, physical building was removed," and that the "new structure included new framing and structural

---

[3]  The signature line on the BBA Order says it was entered on the "19th day of 2018, 2018."  ECF No. 121-3 at 6.

[4]  While the BBA Order was not among the numerous exhibits attached to the SAC, the City attached a copy of it as an exhibit to its motion to dismiss.  The Court may consider it without converting the motion into a motion for summary judgment.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (explaining that a court may consider extrinsic documents on a motion to dismiss without converting the motion to a motion for summary judgment if the documents' authenticity is not contested and the plaintiff's complaint necessarily relies on them (citation omitted)).

columns, new cement pads, and was a new building." *Id.* at 3.  The BBA

acknowledged the Challacombe Letter's approval of the "revised plan," *id.*, but

ultimately upheld Seguirant's March 2017 NOO because Schmit[5] "demolished and

removed the existing structure and did not construct the new building in the

shoreline setback area according to the approved plans[.]" *Id.* at 5.

It is undisputed that Plaintiff did not appeal the BBA Order to the state

circuit court within the thirty-day appeal period outlined in HRS § 91-14(b).

## B.   Procedural History

Plaintiff commenced this action on May 3, 2018 and filed the SAC on

August 29, 2019, asserting the following claims:  Count One – Fourteenth

Amendment violations pursuant to 42 U.S.C. §§ 1981, 1983 (against Seguirant);

Count Two – Fourteenth Amendment violations pursuant to 42 U.S.C. §§ 1981,

1983, municipal liability, ratification or approval (against the City); Count Three –

Fourteenth Amendment violations pursuant to 42 U.S.C. § 1983, municipal

liability, policy of inaction and/or delay (against the City); Count Four – violations

of procedural due process pursuant to 42 U.S.C. § 1983, municipal liability

(against the City); Count Five – negligence, negligent hiring, training, retention,

and/or supervision (against the City); Count Six – equitable estoppel; Count Seven

– declaratory and injunctive relief; Count Eight – negligence (against Talboys and

---

[5]  Schmit was the named petitioner in the BBA appeal.  *See* ECF No. 121-3 at 1.

Schmit); and Count Nine – Unfair or Deceptive Acts or Practices – UDAP (against

Talboys and Schmit).  Plaintiff prays for declaratory relief, injunctive relief,

monetary damages, punitive damages, treble damages, costs of suit, and attorneys'

fees.  ECF No. 79 at 46–48.

Seguirant and the City each filed motions to dismiss on May 26, 2020.  ECF

Nos. 121, 122.  Plaintiff moved for partial summary judgment on Count Six on

June 15, 2020.  ECF No. 130. In accordance with the Court's October 6, 2020

Entering Order, ECF No. 158, Plaintiff and the City Defendants each submitted a

supplemental memorandum on October 9, 2020 regarding the doctrine of

exhaustion of administrative remedies.  ECF Nos. 164, 165.  Oral argument was

presented at a motions hearing on October 16, 2020.  ECF No. 166.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure ("FRCP") 12(b)(6) authorizes dismissal of a

complaint that fails "to state a claim upon which relief can be granted."  Fed. R.

Civ. P. 12(b)(6).  On a Rule 12(b)(6) motion to dismiss, "the court accepts the facts

alleged in the complaint as true," and "[d]ismissal can be based on the lack of a

cognizable legal theory or the absence of sufficient facts alleged."  *UMG*

*Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir.

2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

1988)) (alteration in original).  However, conclusory allegations of law,

unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000) (citation omitted). Furthermore, the court need not accept as true allegations that contradict matters properly subject to judicial notice.  *See Sprewell*, 266 F.3d at 988.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The tenet that the court must accept as true all the allegations contained in the complaint does not apply to legal conclusions.  *See id.*  As such, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (some alterations in original).  If dismissal is ordered, the plaintiff should be granted leave to amend

unless it is clear that the claims could not be saved by amendment.  *See Swartz v. KPMG LLP*, 476 F.3d 756, 760 (9th Cir. 2007) (citation omitted).

### III.   DISCUSSION

The SAC is disorganized and unclear.  Because several issues are common to both of the separate motions to dismiss filed by the City Defendants, the Court addresses various claims collectively and in a different order than how they are presented in the SAC.

### A.   Plaintiff's Claims against Seguirant in His Official Capacity

As a preliminary matter, Plaintiff does not specify in the SAC whether he asserts his federal civil rights claim against Seguirant in his individual or official capacity.  Seguirant correctly contends that any claims against him in his official capacity should be dismissed because he was acting as a building inspector within the course of his official duties, and the City is therefore the proper party.  ECF No. 121-1 at 19.  "Since official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent," *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978), such suits should "be treated as a suit against the entity."  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citation omitted).  "It is *not* a suit against the official personally, for the real party in interest is the entity."  *Id.*  Accordingly, the claims against Seguirant in his official capacity are DISMISSED WITH PREJUDICE.  *See Park v. City & County*

*of Honolulu*, 292 F. Supp. 3d 1080, 1090 (D. Haw. 2018) (dismissing with prejudice official capacity claims against the individual officer defendants).

**B.     42 U.S.C. § 1981 (Counts One and Two)**

Plaintiff alleges that Seguirant violated 42 U.S.C. § 1981 in the caption of Count One, but it is unclear which of the allegations in Count One relate to that statute, if any.  Plaintiff expands on this claim in his opposition brief, arguing that Seguirant interfered with his contractual relationships with his architect and general contractor.  ECF No. 146 at 11.  Plaintiff likewise alleges that the City violated Section 1981 in Count Two, but again fails to identify specific violations of Section 1981.

Section 1981 was "meant, by its broad terms, to proscribe discrimination in the making or enforcement of contracts against, or in favor of, any race." *Gratz v. Bollinger*, 539 U.S. 244, 276 n.23 (2003) (internal quotation marks and citation omitted).  "'Race' is interpreted broadly to mean classes of persons identifiable because of their ancestry or ethnic characteristics." *Gathenji v. Autozoners, LLC*, 703 F. Supp. 2d 1017, 1029 (E.D. Cal. 2010) (quoting *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 612–13 (1987)).  The Supreme Court has explained that Section 1981 is "intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." *Saint Francis Coll.*, 481 U.S. at 613.  In order

14

to state a claim under Section 1981, it is essential that the plaintiff "initially identify an impaired contractual relationship . . . under which the plaintiff has rights." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006) (internal quotation marks, citation, and footnote omitted).

Because Section 1981 claims typically arise in employment discrimination cases, the Court must evaluate such claims using the first three elements of the *McDonnell Douglas*[6] test used in Title VII discrimination cases even though the claims here do not involve an employment relationship. *See Lindsey v. SLT L.A., LLC*, 447 F.3d 1138, 1145 (9th Cir. 2006). Accordingly, Plaintiff must plead that he (1) is a member of a protected class, (2) attempted to contract for certain services, and (3) was denied the right to contract for those services. *See id.* For purposes of a §1981 claim, however, Plaintiff's protected class must relate to his or her "ancestry or ethnic characteristics." *Saint Francis Coll.*, 481 U.S. at 613.

For the City to be liable under Section 1981, Plaintiff must also "show that the violation of his 'right to make contracts' protected by § 1981 was caused by a custom or policy within the meaning of *Monell*[7] and subsequent cases." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735–36 (1989).

---

[6] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[7] *Monell* held that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694. "Instead, it

(continued . . .)

The City Defendants do not address the question of whether Plaintiff belongs to a protected class in the context of his Section 1981 claims.  The Court may nonetheless dismiss Plaintiff's Section 1981 claims sua sponte without notice where "it is obvious that the plaintiff 'cannot possibly win relief.'"  *Landucci v. State Farm Ins. Co.*, 65 F. Supp. 3d 694, 711 (N.D. Cal. 2014) (citation omitted); *see also Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988).  Such is the case here.

Plaintiff argues that when Seguirant talked about "shutting down . . . these Haoles," Seguirant was referring to "the class of people (all races alike) that were not born and raised in Hawaii, which includes Plaintiff Yoshikawa (a Japanese national) and Plaintiff's architect, general contractor and his employees alike who were not born and raised in Hawaii."[8]  ECF No. 146 at 10.  This definition

---

(. . . continued)
is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  *Id.*  At the motions hearing, Plaintiff's counsel seemed to misconstrue *Monell* by arguing that Seguirant's actions violated a City policy or custom, not that he was acting in accordance with a City policy or custom.

[8]  Multiple cases in this District explain that the term, "Haole," refers to a white person.  *See, e.g.*, *Kaulia v. Cnty. of Maui, Dep't of Pub. Works & Waste Mgmt.*, 504 F. Supp. 2d 969, 975 n.9 (D. Haw. 2007) ("'Haole' means 'foreign' or 'foreigner' in Hawaiian.  The term is used in modern day vernacular to refer— either descriptively or derisively—to Caucasians."); *Chenoweth v. Maui Chem. & Paper Prods., Inc.*, CV. No. 07-00092 DAE–KSC, 2008 WL 4107906, at *7 n.3

(continued . . .)

precludes Plaintiff from pleading a Section 1981 claim because a class of people

that consists of anyone not born and raised in Hawai'i is not a protected class under

Section 1981 or the *McDonnell Douglas* framework.

In addition, as the City Defendants point out, the Section 1981 claims are

currently defective because Plaintiff did not identify a contractual relationship

under which he has rights.  ECF No. 121-1 at 24; ECF No. 122-1 at 20–21.

Plaintiff responds that "all one has to do is look to the case caption and see that

there are significant contractual relationships and alleged breaches at stake here."

ECF No. 146 at 11.  But while Plaintiff has indeed asserted claims against his

general contractor and his architect, the existence of those claims does not alleviate

Plaintiff's burden of identifying in a Section 1981 claim the contractual

relationship impaired.  Finally, Plaintiff failed to identify the City's "custom or

policy" that resulted in the impairment of Plaintiff's contractual rights.

Amendment of the Section 1981 claims would not be futile.  At the motions

hearing, Plaintiff's counsel stated that Plaintiff would rely on a race-based theory

---

(. . . continued)
(D. Haw. Sept. 3, 2008) ("'Haole' is a Hawaiian word often used to describe a
Caucasian person.").  But for the purposes of evaluating Defendants' Motions to
Dismiss, the Court uses Plaintiff's definition.  *See Davis v. KHNL/KGMB, LLC*,
Civil No. 14-00483 SOM/BMK, 2015 WL 3448737, at *2 (D. Haw. May 28, 2015)
(explaining that courts evaluate motions to dismiss "'on the assumption that all the
allegations in the complaint are true even if doubtful in fact'" (quoting *Twombly*,
550 U.S. at 555) (other citation omitted)).

of discrimination if his "localism" argument should fail.[9]  The Court concludes that it is at least possible that Plaintiff could assert a Section 1981 claim based on possible discrimination on Seguirant's part against Caucasians (the vernacular definition of the word "Haole") if Seguirant was indeed discriminating against Plaintiff's Caucasian agents to Plaintiff's detriment.  *See McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 286–87 (1976) ("[Section] 1981 is applicable to racial discrimination in private employment against white persons."); *Maynard v. City of San Jose*, 37 F.3d 1396, 1403 (9th Cir. 1994) (holding that a white plaintiff has standing to assert racial discrimination claims under Section 1983 relating to discrimination against non-white groups where such discrimination resulted in injuries that were personal to the plaintiff and the plaintiff was the "only effective plaintiff who can bring [the] suit" (citing cases involving Section 1981 claims)).  It is further conceivable that Plaintiff could allege facts identifying a contractual relationship that was impaired as well a "custom or policy" on the part of the City that resulted in the impairment of Plaintiff's contractual rights.  Plaintiff's Section

---

[9]  Plaintiff's counsel further stated discovery would enable Plaintiff to ascertain against whom Seguirant was discriminating.  Discovery is generally unavailable to Plaintiffs seeking additional information to cure inviable claims, and therefore discovery will not be allowed on this topic prior to the filing of an amended complaint.  *See Hu Honua Bioenergy, LLC v. Hawaiian Elec. Indus., Inc.*, Civil No. 16-00634 JMS-KJM, 2017 WL 11139576, at *2 (D. Haw. July 6, 2017) ("The law is well settled that a plaintiff is not entitled to discovery it might need to state a plausible claim for relief." (citation omitted)).

1981 claims (Count One and a portion of Count Two) against Seguirant in his individual capacity and the City are therefore DISMISSED WITH LEAVE TO AMEND.

## C.     42 U.S.C. § 1983:  Procedural Due Process (Counts One and Four)

In Counts One and Four, Plaintiff alleges that Seguirant and the City are each liable under Section 1983 for violating Plaintiff's procedural due process rights under the Fourteenth Amendment.  Plaintiff alleges that Seguirant's various "unreasonable, arbitrary and capricious actions" amount to procedural due process violations.  ECF No. 79 ¶ 121.  Plaintiff alleges that the City committed procedural due process violations by (1) relying on unwritten rules that contradict the published the "50 percent rule" contained in ROH § 23-1.6 (which limits renovations of nonconforming structures to fifty percent of the replacement cost of the structure), and (2) failing to have DPP follow the April 2017 NOV with a Notice of Order, which would give Plaintiff a basis to commence a second BBA appeal.  *Id.* ¶¶ 145–48.

"To obtain relief on a procedural due process claim, the plaintiff must establish the existence of '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'"  *Shanks v. Dressel*, 540 F.3d 1082, 1090 (9th Cir. 2008) (alterations in

19

original) (citation omitted).  At its core, procedural due process requires notice and an opportunity to be heard.  *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

Plaintiff argues that the City's failure to "Notice to Order" the April 2017 NOV deprived him of a right to be heard.  ECF No. 79 ¶ 148.  Yet, Plaintiff also alleges that the April 2017 NOV "concern[ed] the same alleged issues pertaining to the Project's scope of work in the setback" as outlined in the May 2016 NOV and/or March 2017 NOO.[10]  *Id.* ¶ 88.  Indeed, the April 2017 NOV included violations of ROH Chapters 23 (Shoreline Setbacks), 25 (Special Management Area), and 18 (Fees and Permits for Building, Electrical, Plumbing and Sidewalk Codes) that were raised in the May 2016 NOV and March 2017 NOO.  *See* ECF Nos. 79-6, 79-10, 79-12.

Following the BBA Hearing, the BBA upheld Seguirant's determination that the Project violated portions of ROH Chapter 18 and denied Plaintiff the right to proceed with the Project.  *See* ECF No. 121-3 at 5 ("[T]he Petitioner demolished and removed the existing structure and did not construct the new building in the shoreline setback area according to the approved plans[.]").  Plaintiff's allegation that DPP's failure to "Notice to Order" the April 2017 NOV "caus[ed] the Project

---

[10]  The SAC does not identify the applicable Notice.  *See* ECF No. 79 ¶ 88.

to be stuck in limbo for over two years," ECF No. 79 ¶ 148, is simply implausible in light of the BBA's determination that the Project could not proceed.[11]

It is also unclear how Plaintiff can assert that the City did not afford him process with respect to the deprivation at issue, *i.e.*, the City's refusal to allow the Project to proceed, when his architect—represented by counsel—participated in a contested case hearing before the BBA, and the BBA Order was appealable.[12]

It is conceivable that Plaintiff may be able to plead facts giving rise to a procedural due process violation on the part of Seguirant and/or the City. Plaintiff's procedural due process claims against Seguirant in his individual

---

[11]  Given that the BBA upheld Seguirant's determination in the May 2016 NOV and the March 2017 NOO that the Project violated portions of ROH Chapter 18, Plaintiff fails to demonstrate how he could have been able to proceed with the Project even if the April 2017 NOV was followed by a Notice of Order and a subsequent determination by the BBA that the Project did not violate the relevant provisions of ROH Chapters 23 and 25.

[12]  In his Supplemental Memorandum, Plaintiff argues that the City did "not even provid[e] notice by mailing the order to the right people in violation of HRS §[ ]91-12." ECF No. 164 at 4 (footnote omitted).  But the SAC does not allege a mistake *by the City* in this regard.  The only information in the present record about the topic is in the City's Concise Statement of Facts, which states that the BBA Order was mailed to the address on file for both Schmit and his attorney (as a courtesy) and that the BBA was not informed that Schmit's address had changed. ECF No. 144 at 10.  Plaintiff may be able to plausibly allege in an amended complaint that the City's failure to provide his agents with copies of the BBA Order amounted to a procedural due process violation.

capacity in Count One and against the City in Count Four are therefore

DISMISSED WITH LEAVE TO AMEND.

## D.    42 U.S.C. § 1983:  Substantive Due Process (Count One)

In Count One, Plaintiff also alleges that Seguirant violated his substantive

due process rights by "depriv[ing] Plaintiff of his vested rights under the

[Amended Building Permit], and the use or enjoyment of his Property for two

years."  ECF No. 79 ¶ 122.

"The guarantee of substantive due process provides heightened protection

against government interference with certain fundamental rights and liberty

interests."  *Krainski v. Nevada ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*,

616 F.3d 963, 969 (9th Cir. 2010) (internal quotation marks and citation omitted).

"To state a substantive due process claim, the plaintiff must show as a threshold

matter that a state actor deprived it of a constitutionally protected life, liberty or

property interest."  *Shanks*, 540 F.3d at 1087 (citing *Action Apartment Ass'n, Inc.*

*v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1026 (9th Cir. 2007)).  The

"'irreducible minimum' of a substantive due process claim challenging land use

action is failure to advance any legitimate governmental purpose."  *Id.* at 1088

(quoting *N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 484 (9th Cir. 2008))

(other citation omitted).  "When executive action like a discrete permitting

decision is at issue, only 'egregious official conduct can be said to be "arbitrary in

the constitutional sense"':  it must amount to an 'abuse of power' lacking any

'reasonable justification in the service of a legitimate governmental objective.'"

*Id.* (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (other

citation omitted)).

Because Plaintiff asserted his substantive due process claim against

Seguirant and not the City, only Seguirant's actions (issuing the May 2016 NOV,

the March 2017 NOO, and the April 2017 NOV) matter here.  Even if Plaintiff

were able to establish the threshold element of a constitutionally protected property

right, Plaintiff's substantive due process claim would nonetheless fail as a matter

of law.  Accepting the factual allegations in the SAC as true, it is simply

implausible that Seguirant's actions "lack[ed] any 'reasonable justification in the

service of a legitimate governmental objective.'"  *Shanks*, 540 F.3d at 1088

(citation omitted).  Plaintiff himself alleges that Talboys and/or Schmit "violated

applicable code and regulations of [DPP]" and "caused the scope of the Project to

exceed the scope of the permits."  ECF No. 79 ¶¶ 169–70.  At the motions hearing,

Plaintiff's counsel explained that the claims against Schmit and Talboys were

alternative theories of liability in the event that the Court rejected Plaintiff's

principal claim that he was entitled to proceed with the Project.  But "[a] pleader

may assert contradictory statements of fact only when legitimately in doubt about

the facts in question."  *Total Coverage, Inc. v. Cendant Settlement Servs. Grp.,*

23

*Inc.*, 252 F. App'x 123, 126 (9th Cir. 2007) (internal quotation marks and citation omitted).  As Plaintiff evidently concedes that it is at least possible that the Project violated municipal law, Plaintiff cannot plausibly claim that Seguirant's actions (enforcing the provisions that Schmit and/or Talboys may violated) were wholly divorced from a governmental interest.

Plaintiff's substantive due process claim against Seguirant is therefore DISMISSED WITH PREJUDICE. Dismissal is with prejudice because the facts Plaintiff already alleged prevent Plaintiff from alleging plausibly that Seguirant's actions were wholly divorced from a governmental interest.

## E.    42 U.S.C. § 1983:  Equal Protection (Counts One and Two)

Plaintiff's counsel stated at the motions hearing that Plaintiff intended to allege equal protection claims against the City Defendants in Counts I and II. Seguirant argues that any alleged equal protection claim fails as a matter of law, contending that there cannot be a class-based claim in the absence of a control group and that a class-of-one theory cannot apply to government action involving discretionary decision making.  ECF No. 121-1 at 22–23.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *Sampson v. County of Los Angeles ex rel. L.A. Cnty. Dep't of Child.*

*& Fam. Servs.*, 974 F.3d 1012, 1022 (9th Cir. 2020) (internal quotation marks omitted) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).  Equal protection claims may be class-based or based on a class-of-one. *See, e.g.*, *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 589 (9th Cir. 2008) (holding that a class-based equal protection claim arises when the "law is applied in a discriminatory manner or imposes different burdens on different classes of people" (internal quotation marks and citation omitted)); *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (holding that an equal protection claim may be "brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment" (citations omitted)).

While the SAC alludes to an equal protection claim, Count One does not appear to assert an express equal protection violation against Seguirant.  Indeed, Plaintiff only mentions the phrase twice in the SAC, *see* ECF No. 79 ¶¶ 3, 109, both times in paragraphs preceding Counts One and Two, the captions for which reference only "Fourteenth Amendment Violations."  *Id.* at 29, 33.  Further, the vaguely alleged equal protection claim in the SAC does not make clear whether

Plaintiff asserts a class-based equal protection claim, a class-of-one equal protection claim, or both.[13]

And while Plaintiff alleges that Seguirant acted with "malice or intent to discriminate against the Plaintiff based on race, alienage, and/or national origin," ECF No. 79 ¶ 119 (emphasis omitted), and inspected the Property more than building inspectors typically inspect comparable projects, *id.* ¶ 57, Plaintiff does not include further factual allegations showing that Seguirant applied the law in a discriminatory manner or applied different burdens to different classes of people, as a class-based equal protection claim requires.  Nor does Plaintiff allege that Seguirant intentionally treated him differently from similarly situated individuals with no rational basis for the difference in treatment, which a class-of-one claim requires.[14]

---

[13]  Even Plaintiff's opposition briefs do not shed light on the matter, as they allude to but do not expressly articulate the basis for his equal protection claim.  *See generally* ECF Nos. 145, 146.

[14]  Plaintiff's allegation that Seguirant inspected the Property more than other building inspectors inspect comparable projects, ECF No. 79 ¶¶ 54, 57, is insufficient because Plaintiff has not pleaded facts showing that Seguirant intentionally treated Plaintiff differently than similarly-situated individuals with no rational basis for the difference in treatment.

It is conceivable that Plaintiff could plead facts giving rise to an equal protection claim.  The equal protection claims against Seguirant in his individual capacity and the City are therefore DISMISSED WITH LEAVE TO AMEND.[15]

**F.    42 U.S.C. § 1983:  Claim for Ratification or Approval (Count Two)**

In Count Two of the SAC, Plaintiff alleges that the City committed various Fourteenth Amendment violations under a theory of ratification or approval for which it is liable under Section 1983.  Specifically, Plaintiff contends that the City ratified and approved Seguirant's wrongful acts through the DPP Director's signing of the April 2017 NOV and the DPP Director's failure to rescind the Stop Work Order Seguirant issued in the April 2017 NOV.  ECF No. 79 ¶¶ 128–130.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691.  A municipality can be liable, however, if "an official with final policy-making authority ratified a subordinate's unconstitutional decision or action *and the basis for it*." *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992) (emphasis added) (citations omitted).  The policymaker must further "make a deliberate choice from among

---

[15]  Because the Court dismisses Count One against Seguirant, it need not reach Seguirant's qualified immunity argument.  Indeed, it is difficult for the Court to address qualified immunity without knowing the precise contours of Plaintiff's constitutional claims against Seguirant.

various alternatives to follow a particular course of action." *Id.* (citing *Oviatt ex rel. Waugh v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992)).

The SAC does not indicate which of Seguirant's acts were allegedly unconstitutional and how they were unconstitutional.  Even assuming Seguirant engaged in unconstitutional conduct, the SAC does not outline the DPP Director's ratification of the action and the basis for it.  Indeed, nothing in the SAC suggests that the DPP Director was aware of any statements Seguirant made, any biases Seguirant harbored, or that Seguirant maintained his own contracting business while working as a building inspector for the City.

It is conceivable that Plaintiff could plead facts showing that Seguirant's supervisor ratified an unconstitutional act on Seguirant's part as well as the basis for such act.  Accordingly, Count Two is DISMISSED WITH LEAVE TO AMEND.

**G.    42 U.S.C. § 1983:  Fourteenth Amendment Violations for Policy of Inaction or Delay (Count Three)**

In Count Three of the SAC, Plaintiff alleges that the City is liable for its policy of inaction or delay that amounted to a failure to protect Plaintiff's constitutional rights.  While the Court acknowledges that Count Three is not particularly clear, the City misconstrues Count Three as purely a claim for substantive due process violations.  Plaintiff's counsel represented at the motions hearing that Count Three also includes procedural due process violations.  "[A]

28

local governmental body may be liable if it has a policy of inaction and such inaction amounts to a failure to protect constitutional rights." *Oviatt*, 954 F.2d at 1474 (citation omitted).  Thus, the City could theoretically be liable if its policy of inaction and delay resulted in a substantive or procedural due process violation.

Under *Oviatt*, the elements of a municipal liability claim under Section 1983 arising out of a policy of inaction or delay are:  "(1) that [the plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'"  *Id.* (citation omitted).

Plaintiff must plead facts showing that "the need for more or different action 'is so obvious, and the inadequacy [of the current procedure] so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need.'"  *Id.* at 1477–78 (alterations in original) (citation omitted).  Although the SAC conclusorily alleges that the City's policy of inaction or delay "evidences a deliberate indifference to the Plaintiff's rights to substantive and procedural due process," ECF No. 79 ¶ 138, it offers no facts demonstrating an obvious inadequacy of the City's procedures.  In the absence of such allegations, Plaintiff not only failed to plead the existence of a

policy of inaction or delay, but also failed to plead that the City's policy amounts to deliberate indifference.

It is conceivable that Plaintiff may be able to plead facts that give rise to a *Monell* claim against the City based on a policy of inaction or delay. As such, Count Three is DISMISSED WITH LEAVE TO AMEND.

## H.  Negligence and Negligent Hiring, Training, Retention, and Supervision (Count Five)

In Count Five of the SAC, Plaintiff appears to assert what he considers to be five separate state law claims against the City: negligence, negligent hiring, negligent training, negligent retention, and negligent supervision. The factual bases for these claims are Seguirant's maintenance of a contracting business while working as a building inspector; the City's provision of little-to-no formal training or supervision, which enabled Seguirant to discriminate against Plaintiff; and the City's wrongful retention of Seguirant after being put on notice of his misconduct. ECF No. 79 ¶ 152.

The City argues for dismissal of these negligent employment claims because: (1) the BBA Order collaterally estops Plaintiff from arguing that Seguirant should not have issued the various NOVs and NOO; (2) Plaintiff failed to allege that the City's negligent hiring of Seguirant was the proximate cause of Plaintiff's injuries; and (3) that it was not foreseeable that Seguirant had "dangerous propensities." ECF No. 122-1 at 24–27. The Court need not reach the

issue of whether issue preclusion bars Plaintiff's negligence claim as none of the claims satisfy the requisite requirements as currently pled.

### 1.    Negligence

"It is well-established that, in order for a plaintiff to prevail on a negligence claim, the plaintiff is required to prove all four of the necessary elements of negligence:  (1) duty; (2) breach of duty; (3) causation; and (4) damages." *Cho v. Hawai'i*, 115 Hawai'i 373, 379 n.11, 168 P.3d 17, 23 n.11 (2007) (citation omitted).  Inexplicably, Plaintiff does not include any factual allegations that correspond to these elements, focusing only on the negligent employment claims.  Somewhat understandably, the City's motion also focuses on the negligent employment claims rather than the negligence claim itself.  ECF No. 122-1 at 24–27.  If Plaintiff wishes to assert a negligence claim against the City, Plaintiff must plead facts that satisfy the elements of a negligence claim.

It is conceivable that Plaintiff could plead facts showing that the City breached a duty of care owed to Plaintiff and that such breach caused Plaintiff damages.  As such, Plaintiff's negligence claim in Count Five is DISMISSED WITH LEAVE TO AMEND.

### 2.    Negligent Hiring

Hawai'i law requires employers "to exercise reasonable care in hiring individuals who, because of the nature of their employment, may pose a threat of

injury to members of the public." *Janssen v. Am. Haw. Cruises, Inc.*, 69 Haw. 31, 34, 731 P.2d 163, 166 (1987) (footnote and citations omitted); *see also Kaahu v. Randall*, Civil No. 14-00266HG-RLP, 2018 WL 472996, at *18 (D. Haw. Jan. 18, 2018) (citing *Janssen*).   The elements of a negligent hiring claim are:

> (1) the defendant owed a duty of care to the plaintiff;
> (2) the defendant breached that duty by hiring an employee, even though the defendant knew, or should have known, of the employee's dangerous propensities;
> (3) the plaintiff suffered monetarily compensable physical or emotional injuries; and,
> (4) the breach of the duty was the proximate cause of the plaintiff's physical or emotional injuries.

*See Murphy v. Lovin*, 128 Hawai'i 145, 155–58, 284 P.3d 918, 928–31 (App. 2011), *as corrected* (Jan. 10, 2012) (citing the circuit court's uncontested jury instruction regarding the elements of a negligent hiring claim).   The employer only owes a "duty of care to those who are *foreseeably* endangered by the [dangerous] conduct and only in regard to the risks or hazards whose likelihood made the conduct unreasonably dangerous." *Murphy*, 128 Hawai'i at 158, 284 P.3d at 931 (citation omitted); *see also Ryder v. Booth*, Civil No. 16-00065 HG-KSC, 2016 WL 2745809, at *11 (D. Haw. May 11, 2016) ("The key to a claim of negligent hiring is foreseeability.   If an employer was not on notice as to the hired employee's dangerous propensities, the employer cannot be held liable as a matter of law." (citation omitted)).

It is conceivable that Plaintiff could amend the complaint to remedy his failure to plead facts showing that the City was on notice of Seguirant's "dangerous propensities"[16] when it hired him.  Plaintiff's negligent hiring claim in Count Five is therefore DISMISSED WITH LEAVE TO AMEND.

### 3.    Negligent Retention

"The Hawaii courts have not established the exact elements of a negligent retention claim."  *Ryder*, 2016 WL 2745809, at *11 (citation omitted).  "A valid negligent retention claim nonetheless contains the elements of an ordinary negligence cause of action, from which it is derived."  *Id.* (citation omitted).

Plaintiff alleges that the City "wrongfully retained Defendant Seguirant as a building inspector with DPP, after it was put on notice of his misconduct."  ECF No. 79 ¶ 152.d.  This allegation is confusing as Seguirant's alleged "misconduct" is his allegedly tortious conduct, *i.e.*, discriminating against Plaintiff and maintaining his contracting business while working as a building inspector.  *Id.* ¶ 152.  As the City persuasively argues, its retention of Seguirant could not have

---

[16]  Plaintiff appears to suggest that Seguirant's maintenance of a contracting business constitutes "dangerous propensities" for purposes of a negligent hiring claim yet offers no explanation in support.  The Court is skeptical that this suffices but need not address the question.

been the proximate cause of Plaintiff's injuries if Seguirant had already caused those injuries when the City received notice of the same.

It is conceivable, however, that Plaintiff could amend his complaint in order to allege that Seguirant caused injuries to Plaintiff *after* the City was put on notice of Seguirant's prior alleged misconduct.  The negligent retention claim in Count Five is therefore DISMISSED WITH LEAVE TO AMEND.

### 4.    Negligent Supervision

The Hawaiʻi Supreme Court analyzes negligent supervision claims using the standards set forth in the Restatement of Torts (Second) § 317 (1995).  *See Dairy Rd. Partners v. Island Ins. Co.*, 92 Hawaiʻi 398, 426–27, 992 P.2d 93, 121–22 (2000).  Section 317 states:

> A master is under a duty to exercise reasonable care so to control his servant *while acting outside the scope of his employment* as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if
>> (a) The servant
>>> (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
>>> (ii) is using a chattel of the master, and
>> (b) the master
>>> (i) knows or has reason to know that he has the ability to control his servant, and
>>> (ii) knows or should know of the necessity and opportunity for exercising such control.

Restatement of Torts (Second) § 317 (1995) (emphasis added).  Thus, there can only be a negligent supervision claim arising out of an employee's misconduct when the employee's misconduct occurred outside the scope of his or her employment.  *See Pulawa v. GTE Hawaiian Tel*, 112 Hawai'i 3, 18, 143 P.3d 1205, 1220 (2006) ("[N]egligent supervision may only be found where an employee is acting *outside* of the scope of his or her employment[.]" (citation omitted)).

Plaintiff alleges that if the City had adequately supervised Seguirant, it would not have allowed him to maintain an active contracting business while working as a building inspector or discriminate against Plaintiff.  ECF No. 79 ¶ 152.a–b.  But it is clear from the SAC that Plaintiff believes he was injured by Seguirant's efforts to enforce the City's ordinances in relation to the Property, and so his negligent supervision claim against the City is based on acts Seguirant took within the scope of his employment.  Plaintiff concedes as much in his opposition to the City's Motion:  "the Defendants acted *within* their course and scope of employment."[17]  ECF No. 145 at 17 (emphasis added).

It is conceivable that Plaintiff could amend his complaint to include a tortious act Seguirant committed outside the scope of his employment.  Plaintiff's

_____

[17] While Plaintiff referred to "the Defendants," Plaintiff must have been referring only to Seguirant as Seguirant is the only City employee that Plaintiff sued.

negligent supervision claim is therefore DISMISSED WITH LEAVE TO AMEND.

### 5.   Negligent Training

The Hawai'i Supreme Court has yet to recognize a separate negligent training claim based on section 317, despite "ample opportunity" to do so. *Vargas v. City & County of Honolulu*, CIV. NO. 19-00116 LEK-WRP, 2020 WL 3547941, at *21 (D. Haw. June 30, 2020) (citing *Dairy Rd. Partners*, 92 Hawai'i at 426–27, 992 P.2d at 121–22; *Wong-Leong v. Hawaiian Indep. Refinery, Inc.*, 76 Hawai'i 433, 444, 879 P.2d 538, 549 (1994)). The Court agrees with Judge Leslie E. Kobayashi's prediction in *Vargas* that the Hawai'i Supreme Court "would hold that negligent training is a type of negligent supervision/control" because "appropriate training is undoubtedly one of the ways that an employer controls its employees." *Id.   But see Kaahu*, 2018 WL 472996, at *18 (relying on California law in its recitation of the following elements for a standalone negligent training claim:  "(1) the employer negligently trained the employee regarding the performance of his job duties, (2) which led the employee, in the course of executing his job duties, (3) to cause an injury or damages to the plaintiff" (citation omitted)). Thus, any negligent training claim would simply be a subset of Plaintiff's potential negligent supervision claim, which the Court has given Plaintiff leave to amend. Accordingly, the negligent training claim in Count Five

36

is DISMISSED WITH PREJUDICE, though Plaintiff may allege that the City is liable for issues relating to training in its general negligence claim or if it includes a negligent supervision claim in an amended complaint.

## I.   Equitable Estoppel (Count Six)

In Count Six of the SAC, Plaintiff alleges that "equitable estoppel applies and the Project should be allowed to proceed in accordance with by [sic] DPP Director Challacombe's letter[.]"  ECF No. 79 ¶ 157.  In his motion for partial summary judgment, Plaintiff recharacterizes the claim as separate claims for building or zoning estoppel and vested rights.  *See generally* ECF No. 130.  The Court concludes that it lacks jurisdiction over Count Six because Plaintiff failed to exhaust his administrative remedies.  Indeed, Plaintiff's counsel conceded at the motions hearing that Plaintiff's equitable estoppel claim seeks to "overrule" the BBA Order.  The Court therefore need not reach the merits of the City's motion to dismiss Count Six for failure to state a claim or Plaintiff's motion for partial summary judgment.

The doctrine of exhaustion of administrative remedies provides that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted."  *Aleknagik Natives Ltd. v. Andrus*, 648 F.2d 496, 499 (9th Cir. 1980) (internal quotation marks omitted) (quoting *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51 (1938)).  Where exhaustion is

37

"statutorily mandated," the exhaustion requirement is jurisdictional.  *Eluska v. Andrus*, 587 F.2d 996, 999 (9th Cir. 1978).  If exhaustion is not "statutorily mandated," "its application rests within the sound discretion of the trial court."  *Se. Alaska Conservation Council, Inc. v. Watson*, 697 F.2d 1305, 1309 (9th Cir. 1983). In general, "[e]xhaustion of administrative remedies is not required where administrative remedies are inadequate or not efficacious, or where pursuit of administrative remedies would be a futile gesture."  *Fones4All Corp. v. FCC*, 550 F.3d 811, 818 (9th Cir. 2008) (brackets and internal quotation marks omitted) (quoting *Se. Alaska Conservation Council*, 697 F.2d at 1309).

The BBA Order affirming the March 2017 NOO was appealable but was not appealed.  Under the BBA's enabling ordinance, the "proceedings of the board shall be subject to the provisions of HRS Chapter 91."  ROH § 16-1.1 (adopting the "International Building Code, 2006 Edition" and amending Section 112.5 of that document).  And HRS Chapter 91 (generally known as the Hawaiʻi Administrative Procedure Act) gives a party "aggrieved by a final decision and order in a contested case" the right to seek review in Hawaii's circuit courts, provided that the party institutes a proceeding for review (that is, an agency appeal) within thirty days of service of a certified copy of the final order.  HRS § 91-14(a)–(b).

38

Plaintiff argues in his supplemental memorandum that exhaustion is not required because HRS § 91-14(a) states that "nothing in this section shall be deemed to prevent resort to other means of review, redress, relief, or trial de novo, including the right of trial by jury, *provided by law*."  ECF No. 164 at 2 (some emphases omitted) (quoting HRS § 91-14(a)).  Yet, Plaintiff does not cite any authorities that support his interpretation of the statute, nor does he address ROH 18-5.4(f)(2), which limits relief from a BBA decision to an appeal under HRS Chapter 91:

> Upon service of the notice by the building official as prescribed herein, any work in progress shall be suspended and be stayed until a favorable written decision of the building board of appeals is served upon the permittee.  If an unfavorably written decision is served upon the permittee, any work under the permit shall be stayed *until the judge of the court in which an appeal has been filed pursuant to HRS Chapter 91 rules otherwise.*

ROH § 18-5.4(f)(2) (emphasis added).  *See, e.g.*, *N Grp. LLC v. Hawaiʻi Cnty. Liquor Comm'n*, 681 F. Supp. 2d 1209, 1221 (D. Haw. 2009) (observing that although "HRS § 91-14(a) does state that 'nothing in this section shall be deemed to prevent resort to other means of review, redress, relief, or trial de novo, including the right of trial by jury, provided by law,'" that statement merely does not "foreclose other forms of judicial review *to which a person is otherwise entitled*" and further observing that the applicable statutes did not "provide[]" any

additional avenues to review the Liquor Commission's decision other than that provided in HRS Chapters 281 and 91 (emphasis added)).

The Court concludes that exhaustion is statutorily mandated where an aggrieved party wishes to challenge a final decision of the BBA.  First, it is beyond dispute that the BBA's proceedings are subject to the Hawaiʻi Administrative Procedure Act.  *See* ROH § 16-1.1 (amending Section 112.5 of the International Building Code, 2006 Edition).  Second, a contractor or owner may only resume work halted by a building official following a favorable ruling by the BBA or a court following an agency appeal, as stated in ROH § 18-5.4(f)(2).

Thus, Plaintiff's only avenue to challenge DPP's adverse decision was to present an appeal to the BBA, followed by an agency appeal to the state circuit court.  ROH § 16-1.1 (amending Section 112.5 of the International Building Code, 2006 Edition); *id.* § 18-5.3(f)(2); HRS § 91-14(a)–(b).  Plaintiff's failure to exhaust administrative remedies here is therefore jurisdictional.  *Accord Leone v. County of Maui*, 128 Hawaiʻi 183, 192, 284 P.3d 956, 965 (App. 2012) (holding that exhaustion is statutorily mandated under the Coastal Zone Management Act because aggrieved landowners could either commence an agency appeal under HRS § 91-14 or a civil action under HRS § 205A-6(c)); *N Grp. LLC*, 681 F. Supp. 2d at 1226 (holding that exhaustion is statutorily required in the context of decisions issued by the county liquor commission where the commission's

40

enabling statute provided that the commission's decisions shall be final and shall not be reviewable by or appealable to any court or tribunal, except as otherwise provided in HRS Chapter 281 or HRS Chapter 91, and that such prescribed judicial review is part of the "administrative remedy").

The central premise of Count Six (Plaintiff's equitable estoppel claim) is that Plaintiff is entitled to proceed with construction of the Project in accordance with the Challacombe Letter.  The BBA considered and rejected this argument and Plaintiff did not appeal the BBA Order.  The Court therefore lacks jurisdiction over this claim.[18]  Count Six is therefore DISMISSED WITHOUT PREJUDICE under Rule 12(b)(1).[19]  Plaintiff's motion for partial summary judgment is DENIED AS MOOT.

---

[18]  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).

[19]  The Court concludes that it has jurisdiction over the remainder of the claims in the SAC.  The Court agrees with Plaintiff that the exhaustion requirement does not apply to his §§ 1981 and 1983 claims.  *See Patsy v. Bd. of Regents*, 457 U.S. 496, 500 (1982) ("[W]e have on numerous occasions rejected the argument that a § 1983 action should be dismissed where the plaintiff has not exhausted state administrative remedies." (collecting cases)); *Woods v. Storms*, 793 F. App'x 542, 543 (9th Cir. 2020) ("[Section] 1981 does not require that a plaintiff exhaust administrative remedies before filing a federal lawsuit." (citation omitted)) (mem.).  Plaintiff's various negligence and HRS § 480-2 claims against the City, Talboys, or Schmit do not involve "supposed or threatened injur[ies]" that were properly before the BBA.  *Aleknagik Natives*, 648 F.2d at 499.  The Court therefore has jurisdiction over Counts Five, Eight, and Nine.

**J.      Declaratory and Injunctive Relief (Count Seven)**

Count Seven is styled as a claim for declaratory and injunctive relief.  But neither declaratory relief nor injunctive relief are stand-alone claims as they are duplicative of Plaintiff's other claims; both are remedies that may be available if Plaintiff prevails on one or more of his claims.  *See Long v. JP Morgan Chase Bank, Nat'l Ass'n*, 848 F. Supp. 2d 1166, 1180 (D. Haw. 2012) ("It is well-settled that a claim for 'injunctive relief' standing alone is not a cause of action." (collecting cases)).

Accordingly, the Court DISMISSES Count Seven WITH PREJUDICE.

**K.      Issue Preclusion**

The City Defendants argue that issue preclusion[20] prevents the Court from reconsidering the BBA's rejection of Plaintiff's argument that he is entitled to proceed with the Project because it complies with applicable laws and regulations. ECF No. 121-1 at 20; ECF No. 122-1 at 17–18.  In its Reply, the City points to issue preclusion as its central argument, ECF No. 149 at 5, but other than Plaintiff's declaratory and injunctive relief claim, the City Defendants did not identify in their Motions which claims are barred by issue preclusion.  ECF No. 121-1 at 20; ECF No. 122-1 at 17–18.

---

[20]  Issue preclusion is also referred to as collateral estoppel.

The Court must look to Hawaiʻi law to determine whether the Court must give preclusive effect to the BBA Order.  *See Bridge Aina Leʻa, LLC v. Hawaii Land Use Comm'n*, 950 F.3d 610, 637 (9th Cir. 2020), *petition for cert. filed* (U.S. July 22, 2020) (No. 20-54).  Under Hawaiʻi law, the "judgment of a court of competent jurisdiction is a bar to a new action in another court between the same parties or their privies concerning the same subject matter."  *Id.* (internal quotation marks and citation omitted).  For a prior judgment to have preclusive effect, the following requirements must be satisfied:

> (1) the issue decided in the prior adjudication is identical to the one presented in the action in question; (2) there is a final judgment on the merits; (3) the issue decided in the prior adjudication was essential to the final judgment; and (4) the party against whom [issue preclusion] is asserted was a party or in privity with a party to the prior adjudication.

*Id.* (alteration in original) (additional formatting and citations omitted).  The doctrine of issue preclusion "also appl[ies] to matters litigated before an administrative agency."  *Santos v. State, Dep't of Transp., Kauai Div.*, 64 Haw. 648, 653, 646 P.2d 962, 966 (1982) (collecting cases).

The analysis as to whether the issue before the BBA is identical to the issue presented in this action closely tracks the Court's analysis as to whether Plaintiff failed to exhaust administrative remedies.  While Schmit introduced the Challacombe Letter into evidence at the administrative hearing, the BBA nonetheless upheld the March 2017 NOO because Plaintiff's contractors

43

"demolished and removed the existing structure and did not construct the new building in the shoreline setback area according to the approved plans[.]"  ECF No. 122-3 at 5.  The BBA thus considered and rejected Plaintiff's arguments that the March 2017 NOO and April 2017 NOV were issued in error because they contradict the Challacombe Letter.  *See* ECF No. 79 ¶ 159.

It is apparent from the face of the BBA Order that it is a final (albeit, appealable) judgment denying Schmit's appeal on the merits as the BBA made findings of fact, conclusions of law, and a decision and order following an evidentiary hearing, *see generally* ECF No. 122-3, and the issue of whether Plaintiff could proceed with construction of the Project in the manner that led to the March 2017 NOO was essential to the BBA proceeding.  Indeed, Schmit argued in his BBA Position Statement (drafted by Plaintiff's former counsel) that the March 2017 NOO contradicted the Challacombe Letter, ECF No. 79-14 at 5, which argument the BBA rejected.

Finally, there is no dispute that Plaintiff was in privity with a party in the BBA Proceeding, *i.e.*, Schmit.  *See* ECF No. 79 ¶ 26 ("Plaintiff hired architect Defendant Schmit . . . to design plans and obtain a building permit for a house remodel[.]").

The Court therefore concludes that it must give preclusive effect to the BBA's Order, which determined that the Project violated municipal law,

notwithstanding the contents of the Challacombe Letter.  To the extent that any of Plaintiff's claims require the Court to reach a different opinion on this issue, those claims fail to state a claim upon which relief can be granted.

In Count Six (Plaintiff's equitable estoppel claim), Plaintiff effectively asks the Court to reverse the BBA Order determining that the Project was constructed in violation of municipal law and hold that Plaintiff may proceed with construction in accordance with the Challacombe Letter.  If Plaintiff were to prevail on this claim, the trier of fact would not only have to consider an issue that was before the BBA but would also have to reach the opposite conclusion on that issue.  And the Court must give preclusive effect to the BBA's conclusions relating to the legality of the Project.  In any event, the Court lacks jurisdiction over Count Six and need not make a determination as to whether Count Six should be dismissed on issue preclusion grounds.

As explained above, the Court dismissed Plaintiff's Section 1983 claims based on Plaintiff's failure to plead the essential elements of those claims.  The Court dismissed the claims against Seguirant without reaching his qualified immunity defense.  If Plaintiff asserts Section 1983 claims against the City Defendants in a Third Amended Complaint (not including those claims that were dismissed with prejudice), the Court's conclusion that the BBA's has preclusive effect may bear on the viability of such claims.  In other words, Plaintiff's Section

45

1983 claims will not be viable if the trier of fact must revisit the issue of whether the Project was in fact constructed contrary to law for Plaintiff to prevail on these claims.  But the Court will not engage in that analysis here as Plaintiff has failed to state a Section 1983 claim in the SAC.

## IV.   CONCLUSION

For the reasons set forth above, Seguirant's Motion [ECF No. 121] is GRANTED IN PART AND DENIED IN PART as follows:  (1) all official capacity claims and the substantive due process claim are DISMISSED WITH PREJUDICE; and (2) the Section 1981, procedural due process, and equal protection claims in Count One against Seguirant in his individual capacity are DISMISSED WITH LEAVE TO AMEND.

The City's Motion [ECF No. 122] is GRANTED IN PART AND DENIED IN PART as follows:  (1) the negligent training claim in Count Five and Count Seven are DISMISSED WITH PREJUDICE; (2) Count Six is DISMISSED WITHOUT PREJUDICE; and (3) Counts Two, Three, and Four, and the balance of Count Five are DISMISSED WITH LEAVE TO AMEND.

Given the dismissal of Count Six, Plaintiff's Motion for Partial Summary Judgment [ECF No. 130] is DENIED as MOOT.

Plaintiff may file an amended complaint by February 5, 2021 curing the defects identified in this Order.  Plaintiff may not add parties or claims without

obtaining leave of court.  Failure to comply with this Order may result in the dismissal of this action.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, January 6, 2021.

Jill A. Otake
United States District Judge

Civil No. 18-00162 JAO-RT, *Yoshikawa v. City and County of Honolulu*, ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT TROY K. SEGUIRANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT; GRANTING IN PART AND DENYING IN PART DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT; AND DENYING PLAINTIFF HITOSHI YOSHIKAWA'S MOTION FOR PARTIAL SUMMARY JUDGMENT