IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HITOSHI YOSHIKAWA,<br><br>                  Plaintiff,<br><br>    vs.<br><br>CITY AND COUNTY OF HONOLULU;<br>TROY K. SEGUIRANT, Individually;<br>GREG TALBOYS; AGT<br>CONSTRUCTION, LLC; & JAMES A.<br>SCHMIT,<br><br>                  Defendants. | CIVIL NO. 18-00162 JAO-RT<br><br>**ORDER GRANTING IN PART AND DENYING IN PART (1) DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT, AND (2) DEFENDANT TROY K. SEGUIRANT'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT** |

**ORDER GRANTING IN PART AND DENYING IN PART (1) DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT, AND (2) DEFENDANT TROY K. SEGUIRANT'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

As explained in a prior order, this case concerns Plaintiff Hitoshi

Yoshikawa's ("Plaintiff") attempt to rebuild his house in Kaneohe, Hawai'i and the

regulatory challenges he faced in doing so.  In his Third Amended Complaint

("TAC"), ECF No. 204, Plaintiff alleges that the City and County of Honolulu (the

"City") and one of its building inspectors, Defendant Troy K. Seguirant

("Seguirant"), violated Plaintiff's civil rights through their enforcement of various municipal laws, which frustrated Plaintiff's residential construction project. Plaintiff also asserts various tort claims against the City; his contractor Defendant AGT Construction, LLC ("AGT"); AGT's owner, Defendant Greg Talboys ("Talboys"); and his architect, Defendant James Schmit ("Schmit"). Seguirant and the City (collectively, the "City Defendants") each moved to dismiss the TAC. ECF Nos. 205, 206. For the reasons discussed below, the Court GRANTS IN PART AND DENIES IN PART the City Defendants' motions to dismiss.

## I.     BACKGROUND

### A.     Facts[1]

Plaintiff, a Japanese national, resides in the City and County of Honolulu and owns waterfront real property located in Kaneohe (the "Property"). ECF No. 204 ¶¶ 8–9, 23. At the time Plaintiff purchased the Property in 2014, it contained a "nonconforming structure" within the shoreline setback. *See* ECF No. 204 ¶¶ 23, 31–32; Hawai'i Revised Statutes ("HRS") § 205A-43. Plaintiff then hired Schmit to design plans and obtain a building permit so that Plaintiff could repair and renovate the Property in accordance with rules and regulations pertaining to construction within the shoreline setback area. ECF No. 204 ¶ 26.

---

[1] The Court's recitation of facts is based on the allegations in the TAC, which are taken as true for purposes of the City Defendants' motions to dismiss.

1.      **The Permit and Inspections**

In November 2014, Schmit submitted a building permit application for an "Addition and Alteration to existing Single Family Dwelling," which required approval from various sources, including the Building and Zoning divisions within the City's Department of Planning and Permitting ("DPP").  *Id.* ¶¶ 37, 39. Following extensive review and "[i]terative feedback" between Schmit and DPP officials, Schmit revised the plans and ultimately obtained a building permit from DPP in October 2015.  *Id.* ¶¶ 42–49.  After obtaining the building permit, Plaintiff began substantial work on the addition and alteration project (the "Project"), beginning with demolition work in areas outside the shoreline setback in November 2015.  *Id.* ¶¶ 50–51.

Seguirant inspected the Project at least nine times between December 2015 and May 4, 2016, which, according to Plaintiff's contractors, was unusually frequent as building inspectors might visit comparable projects only two or three times.  *Id.* ¶¶ 52, 54, 57.  Seguirant did not raise any issues or concerns relating to the scope or execution of the Project to Plaintiff, any of Plaintiff's contractors and subcontractors, or Schmit during any of these inspections.  *Id.* ¶ 54.  Plaintiff's contractors noticed Seguirant "approach and converse cordially with the next-door neighbor" on multiple occasions.  *Id.* ¶ 55.  Plaintiff alleges that Seguirant owns and operates a construction business while working as a building inspector for the

3

City, which Plaintiff alleges is a conflict of interest given Seguirant's role as a City building inspector.  *Id.* ¶¶ 13, 217.a.

### 2.    The May 6, 2016 Unappealable Notice of Violation

On May 6, 2016, Seguirant issued a Notice of Violation and Stop Work Order on the Project (the "May 2016 NOV").  *Id.* ¶ 58.  The May 2016 NOV informed Plaintiff that a "new building permit is required for the removal of the walls of the existing non-conforming structure and the construction of the new walls within the shoreline setback area" and cited Plaintiff for the "reconstruction of the existing nonconforming structure within the shoreline setback area."  *Id.* ¶ 63.  The day he issued the May 2016 NOV, Seguirant informed Talboys that "a Complaint had come in from a woman who had seen the construction Project while kayaking in Kaneohe Bay" and that Talboys "better watch out, she's super knowledgeable."  *Id.* ¶¶ 59, 61 (internal quotation marks omitted).  Plaintiff alleges that Seguirant's comment about the kayaker's complaint was fabricated and intended to distract Plaintiff from Seguirant's misconduct that then began to unfold.  *Id.* ¶ 62.

After receiving the May 2016 NOV, Plaintiff stopped work on the Project and requested an appeal or hearing regarding the May 2016 NOV; and Plaintiff's representatives, including Schmit and Talboys, tried to convince various DPP officials to rescind the May 2016 NOV in various written communications and in-

person meetings.  *Id.* ¶¶ 64–69.  In response to Plaintiff's request for an appeal, DPP's then-Acting Director George Atta informed Plaintiff that his request was premature, as Notices of Violation are not appealable; only Notices of Order are. *Id.* ¶ 71.  Plaintiff then continued to exchange information and revised plans with DPP officials, including its Director and Deputy Director.  *Id.* ¶ 73.

### 3.    The Challacombe Letter

In October 2016, then-Acting DPP Director Art Challacombe issued a written letter indicating that a revised proposal Schmit had sent him was consistent with ordinances regarding nonconforming structures in the shoreline setback area (the "Challacombe Letter").  *Id.* ¶ 74.  The Challacombe Letter explained that the revised proposal did not "increase the nonconformity and is less than 50 percent of the replacement cost of the nonconforming structure," and so complied with the City's ordinances regarding construction work within the shoreline setback area. *Id.*  The Challacombe Letter further authorized Plaintiff to submit a building permit based on the revised plans.  *Id.*  Following receipt of the Challacombe Letter, Plaintiff expended substantial resources and time to revise the Project's plans and submitted revised plans in December 2016.  *Id.* ¶¶ 76–77.

### 4.    The March 14, 2017 Appealable Notice of Order

On February 2, 2017, while working in Plaintiff's yard, Plaintiff's contractors overheard Seguirant tell the next-door neighbor, "'I keep shutting them

5

down but f--- [expletive] these Haoles[2] don't listen, that's why I try keep it local.'"  *Id.* ¶¶ 79–81.

On March 14, 2017, Seguirant issued a Notice of Order (the "March 2017 NOO") regarding the May 2016 NOV, which Plaintiff alleges contradicted the Challacombe Letter.  *Id.* ¶ 82.  The March 2017 NOO stated that the "existing non-conforming structure within the shoreline setback area was reconstructed, which is not in accordance with the approved building permit" and that "a new building permit is required for removing the walls of the existing non-conforming structure and constructing new walls within the shoreline setback area."  ECF No. 204-10 at 1.  Plaintiff believed that the Challacombe Letter voided the May 2016 NOV.  ECF No. 204 ¶ 83.  Plaintiff initiated an appeal of the March 2017 NOO with the City's Board of Building Appeals ("BBA").  *Id.* ¶ 87.

### 5.    The Amended Building Permit

Despite the issuance of the March 2017 NOO, on March 29, 2017, DPP issued an amended building permit (the "Amended Building Permit") for the Project that was consistent with the Challacombe Letter.  *Id.* ¶ 84.  Various DPP

---

[2]  Plaintiff explains that while the term "Haole" means "foreign" or "foreigner" in Hawaiian, the term is used in the modern-day vernacular to refer to Caucasians, both descriptively and derisively. ECF No. 204 ¶ 120 n.7 (citing *Kaulia v. Cnty. of Maui, Dep't of Pub. Works & Waste Mgmt*, 504 F. Supp. 2d 969, 975 n.9 (D. Haw. 2007)) (other citation omitted).

officials further verbally assured Plaintiff's representatives that the Project could proceed, so Plaintiff recommenced work on the Project.  *See id.* ¶ 86.

### 6.    The April 7, 2017 Unappealable Notice of Violation

On April 7, 2017, Seguirant issued a further Notice of Violation and Stop Work Order (the "April 2017 NOV").  *Id.* ¶ 88.  The April 2017 NOV "concern[ed] the same alleged issues pertaining to the Project's scope of work in the setback," but in fact covered additional violations as well.  *Id.*; ECF No. 204-12.  The April 2017 NOV stated that the information supplied to obtain the Amended Building Permit was inaccurate in violation of Revised Ordinances of Honolulu ("ROH") § 18-5.3(b); that the existing nonconforming structure was removed and a new structure had been built in its place in violation of ROH § 23-1.6; that the building permit was issued prior to Plaintiff obtaining a special management area use permit in violation of ROH § 18-5.3(b); that a new portion of the structure had been built in the shoreline setback area without a shoreline setback variance in violation of ROH § 23-1.5; and that a structure was built in the special management area prior to Plaintiff obtaining a special management area use permit in violation of ROH § 25-6.1.  ECF No. 204-12.  Plaintiff stopped work on the Project again and continued to challenge the May 2016 NOV, the March 2017 NOO, and the April 2017 NOV, but the various City officials "went silent, ceasing

communications with Plaintiff's representatives as to the status of the Project."
ECF No. 204 ¶¶ 90–92.

### 7.    The BBA Hearing and Order

On November 3, 2017, the BBA held a hearing on Plaintiff's appeal of the
March 2017 NOO, attended by Seguirant and his supervisor. *Id.* ¶¶ 87, 99.  The
BBA ruled on Plaintiff's appeal in its Findings of Fact, Conclusions of Law, and
Decision and Order ("the BBA Order"), which was issued sometime in 2018.[3]  *See*
*id.* ¶ 103–04.  While Plaintiff describes the BBA Order in vague terms and
declined to attach it to the TAC despite attaching numerous other documents, it is
apparent from the face of the TAC that Plaintiff did not prevail before the BBA.
*See id*. ¶¶ 138–41 (alleging that Plaintiff's inability to appeal the BBA Order
deprived Plaintiff of his vested rights under the Amended Building Permit).

Plaintiff alleges that five months after the hearing he still had not received
the BBA Order, but learned through discovery that it was sent to outdated
addresses for Schmit and Plaintiff's prior counsel. *Id.* ¶¶ 101, 103–06.  Plaintiff
alleges that it was the City's fault that the BBA Order was mailed to the wrong
addresses, as Schmit's mailing was returned as undeliverable and Plaintiff's prior
counsel had repeatedly notified DPP of his new address through his pleadings.  *Id.*

---

[3]  The BBA Order says it was entered on the "19th day of 2018, 2018."  ECF No.
204 ¶ 104.

¶ 105, 106, 133, 135.  Plaintiff further alleges that the Stop Work Order contained in the April 2017 NOV is effectively non-appealable because it was not followed by a Notice of Order.  *Id.* ¶ 102.

The BBA found that "Seguirant issued the [May 2016] NOV based on his observations of the Property and determined that the entire structure was demolished which exceeded the scope of work of the Building Permit," that Seguirant's supervisor "confirmed the actual, physical building was removed," and that the "new structure included new framing and structural columns, new cement pads, and was a new building."  ECF No. 179 at 9–10.[4]  The BBA acknowledged the Challacombe Letter's approval of the "revised plan," *id.* at 10, but ultimately upheld Seguirant's March 2017 NOO because Schmit[5] "demolished and removed

---

[4]  The City Defendants, despite relying on the BBA Order, did not attach it to their motions.  *See generally* ECF Nos. 205, 206.  The Court, however, already reviewed the BBA Order in connection with its Order Granting in Part and Denying in Part Defendant Troy K. Seguirant's Motion to Dismiss Plaintiff's Second Amended Complaint; Granting in Part and Denying in Part Defendant City and County of Honolulu's Motion to Dismiss Plaintiff's Second Amended Complaint; and Denying as Moot Plaintiff's Motion for Partial Summary Judgment (the "January 6 Order") and ruled that it must give preclusive effect to the BBA's ruling that the Project violated municipal law, notwithstanding the contents of the Challacombe Letter, under the doctrine of issue preclusion.  ECF No. 179 at 8–10, 42–46.

[5]  Schmit was the named petitioner in the BBA appeal.  *See* ECF No. 121-3 at 1.

the existing structure and did not construct the new building in the shoreline setback area according to the approved plans[.]"  *Id.* at 20.

Plaintiff did not appeal the BBA Order to the state circuit court within the thirty-day appeal period outlined in HRS § 91-14(b).  ECF No. 204 ¶ 197.

## B.  Procedural History

Plaintiff commenced this action on May 3, 2018 and filed the TAC on February 5, 2021, asserting the following claims:  Count One – 42 U.S.C. § 1981 (Fourteenth Amendment – Procedural Due Process and Equal Protection) (against the City and Seguirant); Count Two – 42 U.S.C. §1983 (Fourteenth Amendment violations including procedural due process, equal protection, ratification, and inaction or delay (against the City and Seguirant);[6] Count Four[7] – negligence/negligent retention, negligent hiring,[8] and/or supervision (against the City); Count Five – negligence (against Talboys and Schmit); and Count Six –

---

[6]  The Court cannot comprehend why Plaintiff asserted his procedural due process and equal protection claims in two separate counts or why Plaintiff included his procedural due process and equal protection claims as subparts of his Section 1981 claim (Count One), while only making passing references to the elements of a Section 1981 claim within the Equal Protection subpart.

[7]  The TAC has no Count Three.

[8]  At the parties' Local Rule 7.8 conference, Plaintiff's counsel represented that it was not pursuing a claim for negligent hiring and had inadvertently included it in the TAC.  ECF No. 209 at 2.

Unfair or Deceptive Acts or Practices – UDAP (against Talboys and Schmit).  *Id.*
at 29–55.  Plaintiff prays for declaratory relief, injunctive relief, monetary
damages, punitive damages, treble damages, costs of suit, and attorneys' fees.  *Id.*
at 55–57.

The City and Seguirant each filed motions to dismiss on February 19, 2021.
ECF Nos. 205 (the City's Motion), 206 (Seguirant's Motion).  Plaintiff filed his
oppositions to both motions on March 19, 2021.[9]  ECF Nos. 217, 218.  The City
Defendants filed their reply memoranda on March 25, 2021.  ECF Nos. 220, 221.
Oral argument was presented at a motions hearing on April 23, 2021.  ECF No.
225.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure ("FRCP") 12(b)(6) authorizes dismissal of a
complaint that fails "to state a claim upon which relief can be granted."  Fed. R.
Civ. P. 12(b)(6).  On a Rule 12(b)(6) motion to dismiss, "the court accepts the facts
alleged in the complaint as true," and "[d]ismissal can be based on the lack of a
cognizable legal theory or the absence of sufficient facts alleged."  *UMG
Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir.
2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

---

[9]  Plaintiff filed an amended memorandum in opposition to Seguirant's Motion on
April 5, 2021.  ECF No. 223.

1988)) (alteration in original).  However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000) (citation omitted). Furthermore, the court need not accept as true allegations that contradict matters properly subject to judicial notice.  *See Sprewell*, 266 F.3d at 988.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The tenet that the court must accept as true all the allegations contained in the complaint does not apply to legal conclusions.  *See id.*  As such, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (some alterations

12

in original).  If dismissal is ordered, the plaintiff should be granted leave to amend unless it is clear that the claims could not be saved by amendment.  *See Swartz v. KPMG LLP*, 476 F.3d 756, 760 (9th Cir. 2007) (citation omitted).

## III.   DISCUSSION

### A.   42 U.S.C. § 1981 (Count One)

Plaintiff alleges that the City and Seguirant violated 42 U.S.C. § 1981 in the caption of Count One, but each of the subheadings in Count One refer to portions of Plaintiff's constitutional claims, i.e., procedural due process and equal protection.  ECF No. 204 at 29–37.  Nonetheless, Plaintiff includes allegations relating to the City Defendants' interference with Plaintiff's contracts under the Equal Protection subheading, which appears to be the basis of Plaintiff's Section 1981 claims.  *See id.* at 31–33.

Section 1981 was "meant, by its broad terms, to proscribe discrimination in the making or enforcement of contracts against, or in favor of, any race."  *Gratz v. Bollinger*, 539 U.S. 244, 276 n.23 (2003) (internal quotation marks and citation omitted).  "'Race' is interpreted broadly to mean classes of persons identifiable because of their ancestry or ethnic characteristics."  *Gathenji v. Autozoners, LLC*, 703 F. Supp. 2d 1017, 1029 (E.D. Cal. 2010) (quoting *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 612–13 (1987)).  The Supreme Court has explained that Section 1981 is "intended to protect from discrimination identifiable classes of

13

persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." *Saint Francis Coll.*, 481 U.S. at 613.  In order to state a claim under Section 1981, it is essential that the plaintiff "initially identify an impaired contractual relationship . . . under which the plaintiff has rights." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006) (internal quotation marks, citation, and footnote omitted).

Because Section 1981 claims typically arise in employment discrimination cases, the Court must evaluate such claims using the first three elements of the *McDonnell Douglas*[10] test used in Title VII discrimination cases even though the claims here do not involve an employment relationship.  *See Lindsey v. SLT L.A., LLC*, 447 F.3d 1138, 1145 (9th Cir. 2006).  Accordingly, Plaintiff must plead that he (1) is a member of a protected class, (2) attempted to contract for certain services, and (3) was denied the right to contract for those services.  *See id.*

In *Lindsey*, the Ninth Circuit explained that there was a circuit split as to whether a fourth element applies to Section 1981 claims that arise outside the employment context, which "requires that . . . services remained available to similarly-situated individuals who were not members of the plaintiff's protected class," but declined to decide the issue.  *Id.*  Following *Lindsey*, the majority of courts within the Ninth Circuit apply this fourth element.  *See York v. JPMorgan*

---

[10]  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

*Chase Bank, Nat'l Ass'n*, No. CV-18-04039-PHX-SPL, 2019 WL 3802535, at *2

n.4 (D. Ariz. Aug. 13, 2019) (explaining that "the greater weight of Ninth Circuit

authority" supports the use of the fourth element (collecting cases)).

Nonetheless, the Court is persuaded by the court's reasoning in *Makhzoomi

v. Southwest Airlines Co.*, 419 F. Supp. 3d 1136 (N.D. Cal. 2019), in which an

Iraqi plaintiff alleged that an airline removed him from a flight for speaking Arabic

in violation of Section 1981 after another passenger reported to airline employees

that she heard him express, while he spoke on a cell phone, what she perceived to

be threatening statements. *See id.* at 1147. The court declined to apply the fourth

element, explaining that "in the context of the denial of services by a commercial

establishment, 'the task of producing similarly situated persons outside the

protected group is much more difficult,' given the itinerant nature of the clientele."

*Id.* at 1149 (citation omitted). The court explained that requiring the plaintiff to

compare his treatment with the treatment of other "passengers who were reported

to have been overheard on the airplane making potentially threatening comments"

was an "overly narrow comparison [that] would completely foreclose [the

plaintiff]'s discrimination claim," which reveals the drawbacks of the fourth

element in cases arising outside of the employment context. *Id.* (internal quotation

marks and citation omitted). Instead, the court followed *Christian v. Wal-Mart*

*Stores, Inc.*, 252 F.3d 862 (6th Cir. 2001), in clarifying the *third* element as follows:

> "(3) plaintiff was denied the right to enter into or enjoy the benefits or privileges of the contractual relationship in that (a) plaintiff was deprived of services while similarly situated persons outside the protected class were not and/or (b) plaintiff received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory."

*Makhzoomi*, 419 F. Supp. 3d 1136 (quoting *Christian*, 252 F.3d at 872).

The facts here are analogous to *Makhzoomi*.  Just as the *Makhzoomi* court found it unreasonable to require the plaintiff to compare his treatment with a group passengers that did not appear to exist, forcing Plaintiff to compare his treatment with Seguirant's treatment of other homeowners who were engaged in construction in violation of municipal ordinances would be "overly narrow" as Plaintiff is not well positioned to be aware of Seguirant's conduct each time he inspects a non-compliant project (each of which may vary in the nature of their non-compliance). *Id.* at 1149.[11]

---

[11]  In light of the Court's conclusion that it must give preclusive effect to the BBA's determination that the Project violated municipal law, *see supra* n.4, other homeowners engaging in lawful residential construction were not similarly situated to Plaintiff as a building inspector would naturally treat a homeowner who was in compliance with municipal law differently than one who was not.

16

In contrast, the Ninth Circuit held in *Lindsey* that there was a genuine issue of material fact as to the fourth element — whether the plaintiff, a company that presents fashion shows largely staffed and attended by African-Americans, was provided inadequate accommodations for contracted expectations such as a room for up to 550 guests, when it was denied the use of a hotel's grand ballroom, while a bar mitzvah party was granted use of the grand ballroom despite having a smaller number of attendees. *See Lindsey*, 447 F.3d at 1142–43, 1147. Unlike the plaintiff in *Lindsey*, Plaintiff was not in a position to identify Seguirant's treatment of those similarly situated to him.

### 1. Prima Facie Section 1981 Claim against Seguirant

While the bulk of Count One focuses on Plaintiff's constitutional claims (some of which are repeated in Count Two), the Court concludes that the TAC contains sufficient factual allegations to state a Section 1981 claim against Seguirant. Plaintiff alleges that he contracted with a general contractor and architect, both of whom are "Haole," and that Seguirant interfered with Plaintiff's right to contract with them due to racial animus against "Haoles." *See* ECF No. 204 ¶¶ 120–27. The Court disagrees with Seguirant that Plaintiff failed to plausibly allege how Seguirant impaired Plaintiff's contractual rights. ECF No. 206-1 at 11–12. While Count One is certainly disorganized, the Court understands Plaintiff's argument to be that Seguirant, motived by racial animus, tried to prevent

17

the Project from proceeding by engaging in multiple inspections and issuing

multiple violations.  Plaintiff has further pleaded allegations that satisfy the relaxed

standard in *Christian* that *Makhzoomi* adopted:  Plaintiff received hostile treatment

that a reasonable person would find objectively discriminatory when Seguirant

made the "Haoles" comment referenced in the TAC.  *See Makhzoomi*, 419 F. Supp.

3d at 1149; ECF No. 204 ¶ 81.

Further, Plaintiff may maintain a Section 1981 claim against Seguirant even

if Seguirant was discriminating only against Plaintiff's "Haole" contractor and

architect, and not Plaintiff, a Japanese national.  *See McDonald v. Santa Fe Trail

Transp. Co.*, 427 U.S. 273, 286–87 (1976) ("[Section] 1981 is applicable to racial

discrimination in private employment against white persons."); *Maynard v. City of

San Jose*, 37 F.3d 1396, 1403 (9th Cir. 1994) (holding that a white plaintiff has

standing to assert racial discrimination claims under Section 1983 relating to

discrimination against non-white groups where such discrimination resulted in

injuries that were personal to the plaintiff and the plaintiff was the "only effective

plaintiff who can bring [the] suit" (citing cases involving Section 1981 claims)).

### 2.    Qualified Immunity

Seguirant argues that he is entitled to qualified immunity on Plaintiff's

Section 1981 claim because of a circuit split as to whether Section 1981 provides a

remedy against government officials and because whether to apply the fourth

element described in *Lindsey* is not settled law within the Ninth Circuit.  ECF No. 206-1 at 9–10.  Qualified immunity protects government officials from suit in their individual capacity so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations and footnote omitted).

The existence of a circuit split regarding the viability of a claim does not entitle a government official to qualified immunity where the claim is recognized in the circuit in which the action is maintained.  *See Boyd v. Benton County*, 374 F.3d 773, 781 (9th Cir. 2004) ("If the right is clearly established by decisional authority of the Supreme Court or this Circuit, our inquiry should come to an end.").  Thus, the fact that other circuits may not recognize a claim under Section 1981 against government officials does not entitle Seguirant to qualified immunity.

Moreover, Plaintiff's Section 1981 claim against Seguirant may proceed even though *Lindsey* left open the question as to whether the fourth element of *McDonnell Douglas* applies outside the employment context.  Indeed, "[t]he constitutional right to be free from such invidious discrimination [racial or ethnic animus] is so well established and so essential to the preservation of our constitutional order that all public officials must be charged with knowledge of it." *Williams v. Alhambra Sch. Dist. No. 68*, 234 F. Supp. 3d 971, 978–79 (D. Ariz. 2017) (quoting *Flores v. Pierce*, 617 F.2d 1386, 1392 (9th Cir. 1980)).

### 3. But-for Causation

Seguirant argues that Plaintiff's Section 1981 claim fails because Plaintiff did not allege but-for causation, and that Plaintiff would be unable to allege but-for causation without impeaching the BBA Order, which affirmed the violations Seguirant issued.  ECF No. 206-1 at 10–11.  The Supreme Court recently ruled that a Section 1981 plaintiff must prove but-for causation by showing that "but for the defendant's unlawful conduct, [the plaintiff's] alleged injury would not have occurred."  *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020).

The Court disagrees with Seguirant that the BBA Order prevents Plaintiff from establishing causation.  It may be the case that the Project violated the City's ordinances *and* that Seguirant discriminated against Plaintiff in enforcing those ordinances because of racial animus.  Thus, taking all the allegations in the TAC as true, it is possible that Seguirant would not have enforced the City's ordinances in the precise manner that he did if Plaintiff's contractor and architect were of a different race.

### 4. Municipal Custom or Policy

The City argues that Plaintiff's Section 1981 claim against the City fails because Plaintiff failed to allege that Plaintiff suffered a Section 1981 violation because of a municipal custom or policy.  ECF No. 205-1 at 8–9.  For the City to

be liable under Section 1981, Plaintiff must also "show that the violation of his 'right to make contracts' protected by § 1981 was caused by a custom or policy within the meaning of *Monell*[12] and subsequent cases." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735–36 (1989).

Plaintiff argues that the TAC contains sufficient allegations regarding a municipal policy or custom because he alleged that the City failed to implement non-discrimination or cultural sensitivity training and failed to implement a proper conflict of interest policy or conflict-check for its building inspectors.  ECF No. 217 at 9.  In other words, Plaintiff's theory is not that the City had a custom or policy of discriminating against "Haoles," but that Seguirant was able to engage in such discrimination because the City failed to train him properly.

"To impose liability on a municipal employer for failure to adequately train its employees, a plaintiff must prove that the government's omission amounted to 'deliberate indifference' to the right at issue[.]"  *Raines v. Seattle Sch. Dist. No. 1*, No. C09-203 TSZ, 2013 WL 221630, at *2 (W.D. Wash. Jan. 18, 2013) (citing *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir. 2010)).  In

---

12  In *Monell*, the Court held that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  *Id.*

*Clouthier*, the Ninth Circuit explained that this standard is satisfied "[o]nly where a failure to train reflects a deliberate or conscious choice by a municipality" in order to avoid "diluting the requirement that a local government can be held liable only for an action or inaction that amounts to an official policy[.]"  *Clouthier*, 591 F.3d at 1250 (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)) (internal quotation marks omitted).  Even if the City failed to provide Seguirant with non-discrimination or diversity training, nothing in the TAC indicates that the City evinced "deliberate indifference" toward racial discrimination.  Furthermore, nothing in the TAC suggests that such training would have prevented Seguirant from engaging in discrimination.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001) ("[T]he identified deficiency in a local governmental entity's training program must be *closely related* to the ultimate injury." (internal quotation marks, brackets, and citation omitted)).

The Court also rejects Plaintiff's argument regarding the conflict of interest policy because there is no apparent connection between the City's lack of a conflict of interest policy, which may have prevented Seguirant from inspecting homes in the same market that he services as a general contractor, and Seguirant's racial animus against "Haoles."

Because the Court concludes that Plaintiff failed to allege that his right to make and enforce contracts under Section 1981 was caused by a municipal policy

or custom, the Court need not reach the remainder of the City's arguments regarding Plaintiff's Section 1981 claim.

The Court dismissed Plaintiff's Section 1981 claim against the City in its January 6 Order because Plaintiff failed to allege that the Section 1981 violation occurred pursuant to a municipal policy or custom. ECF No. 179 at 17. Despite another opportunity to sufficiently allege such violation, Plaintiff did not do so in the TAC. The Court thus concludes that further amendment of the Section 1981 claim as to the City would be futile. *See Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (explaining that a district court's discretion to deny leave to amend a complaint is particularly broad where a plaintiff has had prior opportunities to amend).

Regarding Plaintiff's Section 1981 claims, the Court DENIES Seguirant's motion and GRANTS the City's Motion. Plaintiff's Section 1981 claim against the City is DISMISSED WITH PREJUDICE.

## B.    42 U.S.C. § 1983:  Procedural Due Process (Counts One and Two)

In Counts One and Two, Plaintiff alleges that the City Defendants are each liable under Section 1983 for violating Plaintiff's procedural due process rights under the Fourteenth Amendment. Specifically, Plaintiff alleges that he was not afforded procedural due process in the course of the BBA proceedings as the BBA failed to render a decision within a reasonable amount of time and because the

BBA transmitted the BBA Order to the wrong address, thereby preventing Plaintiff from commencing an agency appeal in state court.  *See* ECF No. 204 at 38–42.

"To obtain relief on a procedural due process claim, the plaintiff must establish the existence of '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'"  *Shanks v. Dressel*, 540 F.3d 1082, 1090 (9th Cir. 2008) (alterations in original) (citation omitted).  At its core, procedural due process requires notice and an opportunity to be heard.  *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

### 1.    Deprivation of a Property Interest Protected by the Constitution

The City argues that Plaintiff cannot state a procedural due process claim because Plaintiff failed to allege a liberty or property interest protected by the Constitution, arguing that there is no constitutional right to build a home in violation of municipal law and that the BBA's conclusion that the Project did indeed violate such law is subject to issue preclusion.  ECF No. 205-1 at 11–13.

Plaintiff, however, does not argue that the *outcome* of the BBA proceeding, namely the BBA's conclusion that the Project could not proceed without modification, was a due process violation; instead, Plaintiff alleges that the process itself was procedurally defective.  If the Court were to accept the City's argument that Plaintiff's failure on the merits before the BBA doomed any procedural due

24

process claim, that would mean that the government need not ensure due process

so long as it is correct on the merits, which offends basic notions of due process.[13]

The Ninth Circuit has in the context of a substantive due process claim

"recognized a constitutionally 'protected property interest' in a landowner's right

to 'devote [his] land to any legitimate use.'"  *Squaw Valley Dev. Co. v. Goldberg*,

375 F.3d 936, 949 (9th Cir. 2004), (quoting *Harris v. County of Riverside*, 904

F.2d 497, 503 (9th Cir. 1990)) (brackets in original) (some internal quotation

marks omitted), *overruled on other grounds by Lingle v. Chevron U.S.A. Inc.*, 544

U.S. 528 (2005); *see also Jensen v. County of Sonoma*, No. C-08-3440 JCS, 2010

WL 2330384, at *13 (N.D. Cal. June 4, 2010), *aff'd*, 444 F. App'x 156 (9th Cir.

2011) (explaining that for purposes of a procedural due process claim, "the right to

the use and enjoyment of one's property—is a well-established constitutional

property right").  The Ninth Circuit has further held that while "procedural

requirements ordinarily do not transform a unilateral expectation into a protected

property interest, such an interest is created 'if the procedural requirements are

intended to be a significant substantive restriction on . . . [the administrative

agency's] decision making.'"  *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24

---

[13]  At the hearing, the City Defendants' counsel stated that there can be no due process violation where the government is correct on the merits.  The notion that only parties who are correct on the merits are entitled to due process flies in the face of basic constitutional jurisprudence and is wholly unsupported by caselaw.

F.3d 56, 62 (9th Cir. 1994) (quoting *Goodisman v. Lytle*, 724 F.2d 818, 820 (9th Cir. 1984)) (ellipsis in original) (some internal quotation marks omitted).

Plaintiff alleged that "Plaintiff's normal avenue to challenge DPP's adverse decision was to present an appeal to the BBA, followed by an agency appeal to the state circuit court." ECF No. 204 ¶ 168. Thus, at least at this stage of the proceeding, the Court concludes that Plaintiff's right to appellate review before the BBA was a "significant substantive restriction" on DPP's ability to enforce the City's ordinances by preventing landowners from proceeding with construction. Plaintiff had a constitutionally protected property interest when he appeared before the BBA to challenge the March 2017 NOO and was ultimately deprived of this interest when the BBA affirmed the order. Even if this deprivation was proper, Plaintiff was nonetheless entitled to due process.

### 2.    Lack of Process

As explained above, Plaintiff argues that there was a lack of process when the BBA failed to issue the BBA Order within a reasonable amount of time and when it transmitted the BBA Order to the wrong address. ECF No. 217 at 14–15.

Plaintiff alleges that the BBA's proceedings were subject to the Hawaiʻi Administrative Procedure Act, which in turn required that the BBA render its decision within a reasonable amount of time. ECF No. 204 ¶¶ 167, 170. Plaintiff relies on HRS § 93-13.5, which requires that "an agency . . . adopt rules that

26

specify a maximum time period to grant or deny a business or development-related

permit, license, or approval; provided that the application is not subject to state

administered permit programs delegated, authorized, or approved under federal

law."  HRS § 91-13.5.  Further,

> For purposes of this section, "application for a business or development-related permit, license, or approval" means any state or county application, petition, permit, license, certificate, or any other form of a request for approval required by law to be obtained prior to the formation, operation, or expansion of a commercial or industrial enterprise, or for any permit, license, certificate, or any form of approval required under sections 46-4, 46-4.2, 46-4.5, 46-5, and chapters 183C, 205, 205A, 340A, 340B, 340E, 340F, 342B, 342C, 342D, 342E, 342F, 342G, 342H, 342I, 342J, 342L, and 342P.[14]

HRS § 91-13.5(g).  Plaintiff therefore did not submit an "application for a business

or development-related permit, license, or approval" subject to HRS § 91-13.5 to

---

[14]  The sections referenced relate to county zoning (HRS § 46-4); nonsignificant zoning changes (HRS § 46-4.2); ordinances establishing historical, cultural, and scenic districts (HRS § 46-4.5); planning and traffic commissions (HRS § 46-5); the state land use conservation district (HRS chapter 183C); the Land Use Commission (HRS chapter 205); coastal zone management (HRS chapter 205A); solid waste (HRS chapter 340A); wastewater treatment personnel (HRS chapter 340B); safe drinking water (HRS chapter 340E); Hawaii law for mandatory certification of public water system operators (HRS chapter 340F); air pollution control (HRS chapter 342B); ozone layer protection (HRS chapter 342C); water pollution (HRS chapter 342D); nonpoint source pollution management and control (HRS chapter 342E); noise pollution (HRS chapter 342F); integrated solid waste management (HRS chapter 342G); solid waste pollution (HRS chapter 342H); special wastes recycling (HRS chapter 342I); hazardous waste (HRS chapter 342J); underground storage tanks (HRS chapter 342L); and asbestos and lead (HRS chapter 342P).

the BBA.  Instead, Plaintiff appealed an adverse order from DPP preventing Plaintiff from continuing work on an *existing* building permit.  The Court therefore concludes that even if an agency's violation of HRS § 91-13.5 constituted a lack of process for the purposes of a procedural due process claim, the BBA's handling of Plaintiff's appeal was not subject to this statute.

Plaintiff also alleges, however, that Plaintiff's prior counsel notified the BBA of a change in address several times; that the BBA Order was transmitted to Schmit's prior address and was returned as undeliverable; that he was unable to commence an agency appeal of the BBA Order because he did not receive notice of the BBA Order within the 30-day appeal window; and that the City is therefore at fault for Plaintiff's inability to commence an agency appeal.  ECF No. 204 ¶¶ 154–63.  The Court concludes that Plaintiff sufficiently alleged a lack of process by including factual allegations showing that the City made errors relating to the transmittal of the BBA Order that prevented Plaintiff from commencing an agency appeal relating to the BBA Order.

The City argues that there was no lack of process because there is no constitutional right to an appeal, relying on *Jones v. Barnes*, 463 U.S. 745 (1983), and because Plaintiff received ample process before the BBA.  ECF No. 205-1 at 13.  In *Jones*, the Court ruled that although states must provide counsel for indigent criminal defendants where appeals may be made as a matter of right despite the

lack of a constitutional right to appeal, counsel for such defendants have no duty to raise every colorable claim suggested by their clients. *See Jones*, 463 U.S. at 750–51, 754. The Court is not convinced that *Jones* or the lack of a constitutional right to an appeal forecloses Plaintiff's procedural due process claim. Plaintiff does not argue that he was not denied due process because there was no procedure for appellate review. Rather, Plaintiff contends that he was denied the right to commence an agency appeal that was available under HRS § 91-14(b). ECF No. 204 ¶ 161. Insofar as Plaintiff had a statutory right to commence an agency appeal of the BBA Order, the City's errors that prevented Plaintiff from seeking a timely appeal constitutes a lack of process. And the fact that Plaintiff received *some* process before the BBA does not mean that he was not entitled to any further process.[15]

---

[15] The City argues that the Court already ruled that Plaintiff was afforded process, relying on the Court's statement in the January 6 Order that it is "unclear 'how Plaintiff can assert that the City did not afford him process with respect to the deprivation at issue, i.e., the City's refusal to allow the Project to proceed when his architect—represented by counsel—participated in a contested case hearing before the BBA, and the BBA Order was appealable.'" ECF No. 205-1 at 15 (quoting ECF No. 179 at 21)). In Plaintiff's Second Amended Complaint ("SAC"), however, Plaintiff did not argue that he was deprived of process when he was unable to appeal the BBA Order, instead arguing that the City committed due process violations when it "rel[ied] on unwritten rules that contradict the published . . . '50 percent rule' . . . and (2) fail[ed] to have DPP follow the April 2017 NOV with a Notice of Order." ECF No. 179 at 19 (citing ECF No. 79 ¶¶ 145–48). Plaintiff thus failed to allege a procedural due process violation in the SAC, but cured that deficiency in the TAC.

The City argues that Plaintiff failed to allege that the City was actually responsible for the BBA's transmittal of the BBA Order to the wrong address, as Plaintiff only alleged that his prior counsel updated his address with DPP, not the BBA, and that the Court should not accept Plaintiff's legal conclusion that the City was at fault for this error.  ECF No. 205-1 at 16.  But at this stage, the Court must infer all facts in favor of Plaintiff and so the Court concludes that Plaintiff alleged sufficient facts to support his assertion that the City was at fault, namely that Plaintiff had notified DPP of the change in address and that the BBA had notice that the BBA Order had been returned as undeliverable.[16]  ECF No. 204 ¶¶ 156, 158.

The City argues that Plaintiff was not denied a lack of process because he still could have filed an *untimely* agency appeal and relied on the doctrine of equitable estoppel or changed course with respect to the Project in order to proceed in a manner allowed by DPP.  ECF No. 205-1 at 14–16.  While Plaintiff may certainly have had these options, Plaintiff nonetheless could not commence a

---

[16]  At the hearing, the City Defendants' counsel conceded that accepting all facts in the TAC as true and making each inference in favor of Plaintiff, the TAC contained allegations sufficient to show that the City was at fault for the error in the transmittal of the BBA Order.  Indeed, although not specifically discussed by either party, *Jones v. Flowers*, 547 U.S. 220 (2006), suggests that if the government has knowledge that notice has been returned as undeliverable, due process requires that additional available reasonable steps be taken to provide notice, even if there is a statutory requirement on the party to receive notice to update his mailing address and he fails to do so.

timely agency appeal, which he was entitled by statute to do.  The availability of alternative courses of action do not obviate the fact that Plaintiff has sufficiently alleged that he received a lack of process.

Finally, the City argues that Plaintiff's procedural due process claim fails because Plaintiff failed to allege a cognizable injury that resulted from the lack of process.  *Id.* at 14.  The Court disagrees.  Plaintiff has alleged that he was unable to commence an agency appeal because of the City's failure to transmit the BBA Order to the correct address.  Even if an agency appeal would not have changed the ultimate outcome, a denial of procedural due process "can lead to the award of nominal damages, even where substantive injury cannot be proved."  *Weinberg v. Whatcom County*, 241 F.3d 746, 752 (9th Cir. 2001).  The availability of nominal damages means that Plaintiff need not prove actual damages in order to have a viable procedural due process claim.  *See id.*

The Court therefore concludes that the TAC adequately states a procedural due process claim against the City.

### 3.      Plaintiff's Procedural Due Process Claim against Seguirant

Despite the fact that Plaintiff's procedural due process claim relates to the BBA's handling of the BBA Order, Plaintiff argues that Seguirant is also liable because "Seguirant's unreasonable and irrational conduct . . . forms the genesis of this dispute" and that "Seguirant's conduct . . . drives and forms the very basis of

Plaintiff's procedural due process claims." ECF No. 218 at 16. The Court agrees with Seguirant that Plaintiff has failed to state any procedural due process violation for which Seguirant is responsible. ECF No. 206-1 at 12–13. The TAC includes no allegations showing that Seguirant deprived Plaintiff of a constitutionally protected property or liberty interest without process. And there is no apparent connection between the basis for Plaintiff's procedural due process claim (the BBA's transmittal of the BBA Order to the wrong address) and Seguirant.

The Court concludes that amendment of Plaintiff's procedural due process claim against Seguirant would be futile in light of Plaintiff's failure to state a claim against Seguirant despite previous opportunities to amend his complaint. *See Chodos*, 292 F.3d at 1003.

The Court therefore DENIES the City's Motion with respect to the procedural due process claims in Counts One and Two of the TAC and DISMISSES WITH PREJUDICE those same claims as to Seguirant.

## C.     42 U.S.C. § 1983:  Equal Protection (Counts One and Two)

In Counts One and Two of the TAC, Plaintiff asserts that the City Defendants are liable under Section 1983 for violating the Equal Protection Clause of the Fourteenth Amendment. The basis for Plaintiff's equal protection claim is the "inordinate and unusual amount of attention that has been paid to Plaintiff's remodeling project," which is evidenced by Seguirant's nine inspections of the

Project, as opposed to the two to three site visits building inspectors conduct on comparable projects. ECF No. 204 ¶¶ 173–83. Plaintiff clarified in his opposition to Seguirant's Motion that he is asserting a "class of one" equal protection claim, as opposed to a class-based equal protection claim. ECF No. 218 at 17.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *Sampson v. County of Los Angeles ex rel. L.A. Cty. Dep't of Child. & Fam. Servs.*, 974 F.3d 1012, 1022 (9th Cir. 2020) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)) (some internal quotation marks omitted). In a "class of one" equal protection claim, the plaintiff must allege that "[he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (some internal quotation marks and citations omitted). The Ninth Circuit has "recognized that the rational basis prong of a 'class of one' claim turns on whether there is a rational basis for the *distinction*, rather than the underlying government *action*." *Gerhart v. Lake County*, 637 F.3d 1013, 1023–24 (9th Cir. 2011) (footnote omitted).

Plaintiff argues that his allegation that Seguirant inspected the Project nine times, as opposed to the two-to-three times that a building inspector would inspect

a comparable project, shows that Plaintiff was treated differently than similarly situated individuals.  *See* ECF No. 218 at 19.  Seguirant argues that the owners of similar residential construction projects are not similarly situated to Plaintiff because Plaintiff was constructing the Project in violation of municipal law.  ECF No. 221 at 8–9.

Courts within the Ninth Circuit have "'enforce[d] the similarly-situated requirement with particular strictness when the plaintiff invokes the class-of-one theory.'"  *Leen v. Thomas*, No. 2:12-cv-01627-TLN-DMC, 2020 WL 1433143, at *6 (E.D. Cal. Mar. 24, 2020) (quoting *Warkentine v. Soria*, 152 F. Supp. 3d 1269, 1294 (E.D. Cal. 2016)) (brackets in original) (other citations omitted).  "'Class-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves.'"  *Id.* (quoting *Warkentine*, 152 F. Supp. 3d at 1294); *see also Hood Canal Sand & Gravel, LLC v. Brady*, 129 F. Supp. 3d 1118, 1125 (W.D. Wash. 2015) ("'[Class of one plaintiffs] must demonstrate that they were treated differently than someone who is *prima facie* identical in all relevant respects.'" (quoting *Purze v. Village of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002)) (brackets in original)).

The Court ruled in its January 6 Order that the doctrine of issue preclusion requires that it give preclusive effect to the BBA Order, which determined that the Project violated municipal law.  ECF No. 179 at 44.  Plaintiff must therefore

compare his treatment with, at a minimum, other property owners who have engaged in construction that violates municipal law.  In order for Plaintiff to state an equal protection claim, then, Plaintiff is required to show that Seguirant treated Plaintiff differently than property owners committing similar building code violations, not property owners constructing similar projects who are *not* breaking the law.  Plaintiff has thus failed to allege that he was treated intentionally differently than similarly situated individuals as the TAC fails to identify any similarly situated individuals and/or articulate how Seguirant treated Plaintiff differently from those individuals.

Because of its conclusion that Plaintiff has failed to allege that he was treated intentionally differently than those similarly situated, the Court need not reach the issues of whether Seguirant had a rational basis for treating Plaintiff differently or whether the City has municipal liability for Seguirant's equal protection violation.  The Court further concludes that amendment would be futile in light of Plaintiff's previous opportunities to amend his complaint.  *See Chodos*, 292 F.3d at 1003.  The Court therefore DISMISSES WITH PREJUDICE Plaintiff's equal protection claim against both defendants in Counts One and Two of the TAC.

**D.    42 U.S.C. § 1983:  Claim for Ratification or Approval (Count Two)**

In Count Two of the TAC, Plaintiff alleges that the City is liable under Section 1983 under a theory of ratification or approval.  Specifically, Plaintiff contends that the City ratified and approved Seguirant's wrongful acts through the DPP Director's signing of the April 2017 NOV and the DPP Director's failure to rescind the Stop Work Order Seguirant issued in the April 2017 NOV.[17]  ECF No. 204 ¶¶ 184–92.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."  *Monell*, 436 U.S. at 691.  A municipality can be liable, however, if "an official with final policy-making authority ratified a subordinate's unconstitutional decision or action *and the basis for it*."  *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992) (emphasis added) (citations omitted).  The policymaker must further "make a deliberate choice from among various alternatives to follow a particular course of action."  *Id.* (citing *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992)).

The Court dismissed Plaintiff's ratification or approval claim in its January 6 Order because Plaintiff failed to allege facts showing that the DPP Director ratified an unconstitutional act and the basis for it.  ECF No. 179 at 28.  Here, Plaintiff

---

[17]  Plaintiff mistakenly references the April 2017 NOV as a Notice of Order and also cites the wrong exhibit.  ECF No. 204 ¶ 187 (citing Exhibit 11, instead of Exhibit 12, which is the April 2017 NOV).

posits that Seguirant's April 2017 NOV was the unconstitutional act.  But Plaintiff again fails to allege that the DPP ratified the alleged unconstitutional basis for this act, i.e., Seguirant's discriminatory motives.  *See* ECF No. 204 ¶¶ 189–90.  Just as was the case in the SAC, nothing in the TAC suggests that the DPP Director was aware of any statements Seguirant made, any biases Seguirant harbored, or that Seguirant maintained his own contracting business while working as a building inspector for the City.  Instead, Plaintiff alleges that "ratification can . . . be inferred by the long procedural history of the dispute which was known or should have been known by the DPP Director."  ECF No. 204 ¶ 189.  The DPP's awareness of the dispute does not mean the DPP Director knew, let alone ratified, the basis for Seguirant's actions.  Thus, even if Seguirant's April 2017 NOV was a constitutional violation, Plaintiff has failed to allege facts showing that the City is liable for such violation under a theory of ratification or approval.

Despite being granted leave to amend to plead facts showing that the DPP Director ratified Seguirant's unconstitutional acts and the basis for such acts, Plaintiff has failed to do so.  ECF No. 179 at 28.  The Court therefore concludes that further leave to amend would be futile.  *See Chodos*, 292 F.3d at 1003.  Accordingly, Plaintiff's ratification or approval claim in Count Two is DISMISSED WITH PREJUDICE.

**E.    42 U.S.C. § 1983:  Fourteenth Amendment Violations for Policy of Inaction or Delay (Count Two)**

37

In Count Two of the TAC, Plaintiff alleges that the City is liable for its policy of inaction or delay that amounted to a failure to protect Plaintiff's constitutional rights.  Specifically, Plaintiff alleges that the City's failure to set a defined time frame for the BBA to render decisions violates HRS § 91-13.5 and constitutes a policy of inaction or delay.[18]  ECF No. 204 ¶¶ 199–200.  "[A] local governmental body may be liable if it has a policy of inaction and such inaction amounts to a failure to protect constitutional rights."  *Oviatt*, 954 F.2d at 1474 (citation omitted).

Under *Oviatt*, the elements of a municipal liability claim under Section 1983 arising out of a policy of inaction or delay are:  "(1) that [the plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'"  *Id.* (citation omitted).  In order to properly plead a municipal liability claim based on a policy of inaction or delay, the plaintiff must "identif[y] the challenged policy/custom, explain[ ] how the policy/custom was deficient, explain[ ] how the policy/custom caused the plaintiff harm, and reflect[ ] how the policy/custom amounted to deliberate indifference, i.e., explain[ ] how the

_____

[18] The Court rejected Plaintiff's argument that the BBA was required to set a deadline for issuing orders under HRS § 91-13.5.  *See* Section III.B.2, *supra*.

38

deficiency involved was obvious and the constitutional injury was likely to occur." *Garcia v. County of Riverside*, No. ED CV 18-00839 SJO (ASx), 2018 WL 6133720, at *9 (C.D. Cal. Aug. 29, 2018) (quoting *Young v. City of Visalia*, 687 F. Supp. 2d 1141, 1149 (E.D. Cal. 2009)) (alterations in original) (internal quotation marks omitted).

Plaintiff failed to plead the *Oviatt* elements sufficiently. Even assuming *arguendo* that the City's failure to establish a timeframe for the BBA to issue orders amounts to a policy under *Oviatt*, Plaintiff failed to establish facts showing that the policy constitutes deliberate indifference. In order to properly plead deliberate indifference, Plaintiff must offer facts showing that "the need for more or different action 'is so obvious, and the inadequacy [of the current procedure] so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need.'" *Oviatt*, 954 F.2d at 1477–78 (alterations in original) (citation omitted). Although the TAC alleges that the City's failure to set a time frame for the BBA to issue orders "amounts to deliberate indifference," ECF No. 204 ¶¶ 199–201, Plaintiff has not alleged any facts showing that the BBA's failure to establish a deadline for issuing orders prior to the BBA's handling of Plaintiff's appeal was likely to result in the violation of constitutional rights such that the City was deliberately indifferent to the violation of constitutional rights. *See Bd. of Cty. Comm'rs v. Brown*, 520 U.S.

39

397, 410 (1997) ("'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.").

In light of these conclusions, the Court need not reach the remainder of Defendant's arguments relating to Plaintiff's inaction or delay claim.  The Court dismissed Plaintiff's inaction or delay claim against the City in its January 6 Order due to Plaintiff's failure to plead deliberate indifference.  ECF No. 179 at 29–30. The Court therefore concludes that further leave to amend would be futile.  *See Chodos*, 292 F.3d at 1003.  As such, Plaintiff's claim for inaction or delay in Count Two is DISMISSED WITH PREJUDICE.

## F.   Negligence/Negligent Retention and Negligent Hiring and/or Supervision (Count Four)

In Count Four of the TAC, Plaintiff appears to assert what he considers to be three separate state law claims against the City:  negligence/negligent retention, negligent hiring, and negligent supervision.  Plaintiff, however, disclosed at the parties' Local Rule 7.8 conference that he is not pursuing a negligent hiring claim and included it in the TAC inadvertently, leaving only the negligence/negligent retention claim and the negligent supervision claim.  ECF No. 209 at 2.  Plaintiff's negligent hiring claim is therefore DISMISSED WITH PREJUDICE.

### 1.   Negligence/Negligent Retention

Plaintiff alleges that the City is liable for negligence and negligent retention because it retained Seguirant as an employee after learning of his tortious conduct, specifically his discriminatory conduct toward Plaintiff and his maintenance of a contracting business while working as a building inspector.  ECF No. 204 ¶ 208. "It is well-established that, in order for a plaintiff to prevail on a negligence claim, the plaintiff is required to prove all four of the necessary elements of negligence: (1) duty; (2) breach of duty; (3) causation; and (4) damages." *Cho v. Hawai'i*, 115 Hawai'i 373, 379 n.11, 168 P.3d 17, 23 n.11 (2007) (citation omitted).  "The Hawaii courts have not established the exact elements of a negligent retention claim." *Ryder v. Booth*, Civil No. 16-00065 HG-KSC, 2016 WL 2745809, at *11 (D. Haw. May 11, 2016) (citation omitted).  "A valid negligent retention claim nonetheless contains the elements of an ordinary negligence cause of action, from which it is derived." *Id.* (citation omitted).

The Court dismissed Plaintiff's negligent retention claim in its January 6 Order on the basis that the City's retention of Seguirant could not have been the proximate cause of Plaintiff's injuries if Seguirant had already caused those injuries when the City received notice of the Seguirant's wrongful conduct.  ECF No. 179 at 33–34.  Plaintiff again has failed to plausibly allege that the City's negligent retention of Seguirant was the proximate cause of Plaintiff's injuries

insofar as Plaintiff did not allege that the City knew or should have known that Seguirant had engaged in wrongful conduct *before* Seguirant caused injury to Plaintiff.  ECF No. 205-1 at 24.

The Court has previously given Plaintiff leave to amend in order to allege that the City had knowledge of Seguirant's wrongful conduct at the time Seguirant injured Plaintiff.  ECF No. 179 at 33–34.  As Plaintiff has failed to do so, the Court concludes further leave to amend would be futile.  *See Chodos*, 292 F.3d at 1003. Plaintiff's negligence/negligent retention claim in Count Four is therefore DISMISSED WITH PREJUDICE.

### 2.  Negligent Supervision

Plaintiff alleges that the City engaged in negligent supervision by allowing Seguirant to maintain his general contracting business while working as a building inspector and by providing Seguirant with little to no training as a building inspector, enabling Seguirant to discriminate against Plaintiff.  ECF No. 204 ¶ 217(a–b).  The Hawaiʻi Supreme Court analyzes negligent supervision claims using the standards set forth in the Restatement (Second) of Torts § 317.  *See Dairy Rd. Partners v. Island Ins. Co.*, 92 Hawaiʻi 398, 426–27, 992 P.2d 93, 121–22 (2000).  Section 317 states:

> A master is under a duty to exercise reasonable care so to control his servant *while acting outside the scope of his employment* as to prevent him from intentionally harming others or from so

conducting himself as to create an unreasonable risk of bodily harm to them, if

 (a) the servant

  (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or

  (ii) is using a chattel of the master, and

 (b) the master

  (i) knows or has reason to know that he has the ability to control his servant, and

  (ii) knows or should know of the necessity and opportunity for exercising such control.

Restatement (Second) of Torts § 317 (Am. L. Inst. 1965) (current through 2020 Supp.) (emphasis added).  Thus, there can only be a negligent supervision claim arising out of an employee's misconduct when the employee's misconduct occurred *outside* the scope of his or her employment.  *See Black v. Correa*, CV. No. 07-00299 DAE-LEK, 2007 WL 3195122, at *10 (D. Haw. Oct. 30, 2007) ("[N]egligent supervision may be found only when the employee acts *outside* the scope of his or her employment." (citing *Pulawa v. GTE Hawaiian Tel*, 112 Hawai'i 3, 143 P.3d 1205 (2006); *Dairy Road Partners*, 92 Hawai'i 398, 992 P.2d 93 (2000))); *Carroll v. County of Maui*, Civil No. 13-00066 DKW-KSC, 2015 WL 1470732, at *10 (D. Haw. Mar. 31, 2015) ("To state a claim for negligent supervision or failure to control under Hawai'i law, a plaintiff must allege that the employees who committed the wrongful acts were acting outside the scope of their employment." (citation omitted)).

The Court ruled in its January 6 Order that Plaintiff's negligent supervision claim is defective because Plaintiff believes he was injured by Seguirant's efforts to enforce the City's ordinances in relation to the Property, which constitute acts Seguirant took within the scope of his employment.  ECF No. 179 at 35.  Plaintiff has not included any allegations regarding tortious conduct that Seguirant engaged in *outside the scope of his employment*.  *See generally* ECF No. 204.  Plaintiff's negligent supervision claim therefore remains defective.

Despite the Court's prior ruling, Plaintiff cites *Ryder* for the proposition that "Hawaii law recognizes two types of claims alleging negligent supervision:  one that seeks relief from acts occurring outside the scope of employment, and one that seeks relief from acts that happened in the scope of employment."  ECF No. 217 at 21 (quoting *Ryder*, 2016 WL 2745809, at *10).  In support of this proposition, *Ryder* cites to *Black v. Correa*, 2007 WL 3195122, at *10–11, which explains that in situations where an employee-supervisor negligently supervises other employees, the employer can be held liable for the employee-supervisor's acts within the scope of employment based on *respondeat superior* liability.  *See Ryder*, 2016 WL 2745809, at *10.

But regardless of whether recovery under such a *respondeat superior* theory is a second "type" of negligent supervision claim as termed in *Ryder*, it is clear that Seguirant is not a supervisor as Plaintiff alleges that Seguirant is a building

inspector and makes no references to any employees under Seguirant's supervision.  Thus, as the Court held in the January 6 Order, Seguirant must have committed a tortious act outside the scope of his employment in order for Plaintiff to have a negligent supervision claim against the City.  ECF No. 179 at 34–35.

The Court previously granted Plaintiff leave to amend in order to allege tortious conduct that Seguirant engaged in outside the scope of his employment. ECF No. 179 at 34–35.  Because Plaintiff has not done so, the Court concludes further leave to amend would be futile.  *See Chodos*, 292 F.3d at 1003.  Plaintiff's negligent supervision claim in Count Four is therefore DISMISSED WITH PREJUDICE.

## IV.   CONCLUSION

For the reasons set forth above, The City's Motion [ECF No. 205] is GRANTED IN PART AND DENIED IN PART as follows:  (1) the Motion is denied with respect to the procedural due process claim against the City in Counts One and Two; and (2) the Section 1981 claim in Count One, the equal protection claims in Counts One and Two, the ratification or approval claim in Count Two, the inaction or delay claim in Count Two, and the entirety of Count Four are DISMISSED WITH PREJUDICE as to the City.

Seguirant's Motion [ECF No. 206] is GRANTED IN PART AND DENIED IN PART as follows:  (1) the Motion is DENIED with respect to the Section 1981

claim against Seguirant in Count One; and (2) the procedural due process and

equal protection claims in Count One and Two against Seguirant are DISMISSED

WITH PREJUDICE.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, May 27, 2021.

Jill A. Otake
United States District Judge

Civil No. 18-00162 JAO-RT, *Yoshikawa v. City and County of Honolulu*, ORDER
GRANTING IN PART AND DENYING IN PART (1) DEFENDANT CITY AND
COUNTY OF HONOLULU'S MOTION TO DISMISS PLAINTIFF'S THIRD
AMENDED COMPLAINT, AND (2) DEFENDANT TROY K. SEGUIRANT'S
MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT